VICKSBURG, SHREVEPORT AND TEXAS RAILROAD COMPANY *v.* JOHN CAL-
DERWOOD.

Section fourth of the Act of 1855 provides, "That estimating the value of the property to be expropri-
ated, the basis of assessment shall be the true value which the land possessed *before the contemplated
improvement* was proposed, and without deducting therefrom any amount for the benefit derived by
the owner from the contemplated improvement or work." The true intention of the Legislature in
the passage of this Act was, that the contemplated improvement and the expropriation were to fol-
low immediately upon each other ; and, in this sense, the fourth section is not unconstitutional.

In a suit brought by a railroad company to expropriate land—*Held :* That the defendant has no right,
in addition to the price of the land expropriated, to claim payment for damage which may be done
the rest of his property, when it is shown that such damage is more than compensated by advan-
tages derived from the project.

APPEAL from the District Court of the Parish of Ouachita, *Richardson*, J.
*McGuire & Ray* and *Purvis & Morrison*, for plaintiff. *S. L. Slack, John T.
Ludeling* and *R. W. Jemison*, for defendant and appellant.

MERRICK, C. J. This suit is brought by the plaintiff to obtain a decree of
expropriation of four 15-100 acres of land, to be taken transversely across a tract
of land owned by the defendant in the rear of the square of ground on which he
resides, in the town of Monroe. The tract intersected by the railroad has three
arpents front, by a depth of forty arpents. In 1849 or 1850, it cost the defen-
dant the estimated price of $2000 ; that is, a little less than twenty dollars per
acre.

Prior to the institution of the present proceeding, under the Act of 1855, p.
33, the railroad company tendered the defendant, in current coin, five hundred
dollars as the value of the property sought to be expropriated.

There is some conflict in the testimony, in reference to the value of the land
sought to be expropriated. Some of the witnesses consider the value at $50 or
$60 per acre, and others from $150 to $500 if the inconvenience of the intersec-
tion of the land by the road be considered. Some witnesses also state, that the
railroad has enhanced the land in value three-fourths, and others show that the
ditches by the side of the road not only benefit the place generally, but, by drain-
ing a pond, add twenty dollars per acre in value to 15 or 18 acres on the rear of
the tract.

It is also shown, that the defendant admitted that the sum offered him was
more than the value of his land, but said he did not wish the road to run through
his land.

The jury and court ordered the land to be expropriated, and gave the defendant
$518 75, as the price and costs. He appeals.

The appellee prays the court to amend the judgment in its favor, by reducing
the allowance to the defendant to $20 per acre.

The District Judge held the fourth section of the Act of 1855, p. 33, to be uncon-
stitutional, and the same argument has been addressed to this court. The motion
to amend the judgment compels us to consider this question.

The section is in these words : "That estimating the value of the property to
be expropriated, the basis of assessment shall be the true value which the land
possessed *before the contemplated improvement* was proposed, and without deduct-

ing therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."

In the present case, the Act of 1853, p. 183, shows that this improvement was contemplated in 1852, and it is argued that it is a violation of the Constitution to withhold from the defendant the increase in value which has attached to his property in the last eight years.

It does not appear to us that the Act of 1855 is obnoxious to the charge of unconstitutionality, if it be taken in the sense intended by the Legislature, whereas it may become so by being construed literally. Suppose, for instance, the railroad company should seek, in 1860, to expropriate for the same sum a lot which in 1852, when the road was first contemplated, was worth only $500, when in the interval the defendant had placed buildings and improvements upon the same of the value of $2000, making the lot now of the value of $2,500. Suppose again the natural increase in value of the lot had been $500, independent of the railroad, and that it would have had that value in 1860 if the railroad had crossed the Ouachita River at some other point; Trenton, for instance. In these instances, it would be a violation of the Constitution to expropriate the lot for what it was worth in 1852. But if the case be intended by the Act, where the contemplation of the improvement and expropriation follow immediately upon each other, we cannot see wherein, under the equitable maxims of the civil law, the fourth section is unconstitutional. It is true, the defendant in such case is not allowed the value which the improvement adds to his property. But equity asks, why should the person who has added an additional value to your whole estate pay you such additional value when a portion has been taken for the public use at his instance? When you charge him with such additional value, do you not make him pay for that which his money and labor, and not your own, has created? If your property will now bring more in market, it is because you and your neighbors believe he will be able to accomplish his enterprise in spite of your opposition. Should any cause frustrate his enterprise, your present estimate of your property would be without foundation, and hence it depends upon his success.

Again, it is contended that the railroad, in addition to the value of the land taken for the public improvement, must pay for damage which may be occasioned to the rest of the property, without regard to the advantages derived from the public work. This argument overlooks those principles of the civil law which admit of obligations and duties independent of contracts, and which depend upon the equitable maxim, that one man shall not enrich himself at the expense of another. Thus, where surety is given against the will, or without the knowledge of the debtor, the surety can sue and recover from the debtor, on payment of the debt, the money thus expended. So if a third person pay the debt of another. So Art. 2278 declares that, " Equity obliges the proprietor whose business has been well managed, to comply with the engagements contracted by the manager (*negotiorum gestor*) in his name; to indemnify the manager in all the personal engagements he has contracted, and to reimburse him all useful expenses." These and the like obligations are enforced by courts of justice. With what reason, then, can the defendant demand damages against the railroad company for the inconvenience occasioned in the use of his property, when the same has been more than compensated by advantages, and his land has been rendered more valuable by the labor expended in its drainage, and by the facility with which his products may be taken to market.

The argument, that this is but the payment of damages by means of specula-    V., S. & T. R. R.
tive opinions of men, instead of money, loses much of its force when urged in    CALDERWOOD.
connection with a claim based upon such opinions, with reference to the property
expropriated. For, if such opinions are unsound, when estimating the advan-
tages which the railroad brings to the property in question, by compensating the
damages to other portions of the property, they are equally unsound when they
give to the portion expropriated any value arising from the improvement itself,
because, according to the argument, that is but speculative and might be defeated
by changing the route of the road. If there be anything in this argument, it tends
to prove the equity of the rule established by the Legislature by the Act of 1855.
See the case of *New Orleans, Opelousas and Great Western Railroad Company* v.
*Lagarde,* 10 An. 150.

We are of the opinion, that the testimony shows that the property, at the time
of the expropriation, was worth less than the amount tendered by the railroad
company. Hence, that tender, made in conformity with the 10th section of the
Act, will be the rule of damages in this case, and the defendant will pay the costs
in both courts, the inconvenience in the use of the property being more than
compensated by the drainage and by the increased value given by the road.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment
of the lower court be amended in favor of the appellee, so as to reduce the amount
allowed to *John Calderwood,* the defendant, for the property expropriated, to the
sum of five hundred dollars, and condemning him to pay the costs; and it is fur-
ther ordered, that the judgment so amended be affirmed, the appellant paying the
costs of the appeal.

VOORHIES, J., concurring. I concur in the decree of this court, on the ground
that, conceding to the defendant the correctness of his position with regard to
the assessment of the indemnity, he is not entitled to claim more than the amount
allowed to him. He obtains the full *actual* value of the land expropriated; and,
with regard to the damages, these are compensated by the enhanced value of the
property.