No. 13,781.

Mrs. S. M. Abney vs. Texarkana, Shreveport and Natchez Railroad Company.

Syllabus.

1. In an expropriation suit the owner is entitled to adequate compensation. While great weight is due to the verdict of the jury, both the trial judge and the appellate court must be satisfied that the amount allowed is equal to the value of the land expropriated.   The evidence of witnesses taken as a whole, the value of lands of the vicinity expropriated in other suits, and the price paid for the land and all facts and circumstances considered, sustain a decree for a larger amount than that heretofore allowed.

2. The jurors after having heard the testimony regarding the number of acres of cotton destroyed, fixed it at less than claimed.   Their estimate of the loss is taken as correct.

3. The other claims of plaintiff for damages are considered as offset, as far as plaintiff may have any right, by the increase in value of plaintiff's planta- tion brought about by the construction and operation of the defendant's railroad.

A PPEAL from the First Judicial District, Parish of Caddo—*Land, J.*

*J. Henry Shephard,* for Plaintiff, Appellant.

*Leonard, Randolph & Rendall,* for Defendants, Appellees.

The opinion of the court was delivered by.

BREAUX, J. Plaintiff appeals from a verdict and judgment in her favor for the sum of four hundred and twenty-seven and 20-100 dollars on the ground that the amount is less than the sum to which she is entitled.

This sum was allowed to plaintiff for a right of way consisting of a strip of ground sixty feet wide, running through her plantation, and one hundred feet wide at the switch for a distance stated in the judgment.

She sets forth that by the expropriation she lost the cotton which had been planted on the land which she values at one hundred and sixty dollars. She claims, in addition, four bales of cotton which she avers defendant destroyed by hauling over her other cultivated lands. She further avers that defendant's employés removed the fences around her cultivated lands; that cattle found a free way to her fields and destroyed, by tramping thereon, ten bales of cotton worth the sum of thirty dollars a bale; she complains of the embankment constructed by defendant as a continuing obstruction to the drains, impeding and stopping the flow of water and reducing the capacity of some one hundred and fifty-seven acres of new land for the production of crops, causing damage to the amount of three thousand dollars. She also alleges that this embankment is an obstruction to hauling from one portion of her plantation to the other; that the dwellings, gin house, and other buildings are cut off from the western part of the plantation by this embankment and for this she claims five hundred dollars damages.

The defendant denies that it has caused any damage and sets up in defense that it was with the approval of plaintiff that it built and constructed its line of railway as it did; that it is now in possession of its right of way over which it is operating its daily trains; that plaintiff agreed that she would make a deed to this right of way in consideration of advantage to her property on condition that defendant would construct a switch and platform for the convenience of her plantation; that it went into possession with this understanding, and did construct the switch and platform at a cost of five hundred dollars. Defendant annexed interrogatories to plaintiff to its answer, which plaintiff answered and denied that her son attended to all her business affairs, as alleged by the defendant. She testified that she was not aware of the

building of the road; that her consent was not asked, and she generally negatives all the averments of defendant in the answer.

Defendant concedes that the question of title to the right of way is eliminated by plaintiff's answer to the interrogatories, and avers that the case thereafter presented questions of fact relating to the items for damages.

The different estimates as to value placed upon the land give rise to the first question for our decision. The plantation is about twenty-five miles north of Shreveport on the line of defendant's railroad. The estimates greatly vary. Some of the witnesses have placed an estimate at twenty-five dollars per acre, and others at one hundred dollars, and even more. A number of witnesses agreed upon thirty dollars as the value before the line of the railway was surveyed. This amount was the maximum sworn to by all of defendant's witnesses and by one of the witnesses for the plaintiff. Taking account of the total fixed by plaintiff's witnesses of the value of the land, it would be more than three times larger than the jury's verdict. Taking the average of the minimum amounts testified to by six witnesses for defendant the result is twenty-five dollars an acre as the value at the time before stated. Taking an average of the maximum amounts testified to by these witnesses, the result is thirty dollars. A similar average of the estimates for plaintiff is very much larger, more than seventy-five dollars. Ordinarily, all of the witnesses being equally credible, an average based upon the estimates of the larger number of witnesses should control. True, the rule regarding average in matter of weighing testimony is not a safe one unless all the witnesses are about equally intelligent and credible. We assume in this case that they are. The result is decidedly favorable to the defendant. But other grounds present themselves for our consideration, which, in our view, more than counterbalance the result before found.

In matter of the expropriation of a public road in the vicinity, more than one hundred dollars an acre was allowed for the land. The evidence discloses that in a suit for the expropriation of land in the vicinity a judgment awarding one hundred dollars an acre was delivered.

It appears that plaintiff in this suit has paid a considerable amount more for the land than the amount of the jury's verdict. The witnesses in testifying kept in view that the benefits and advantages of the railroad must be considered, and we have every reason to infer that the jury in assessing the value of the land, took the same view. For rea-

sons that we will insert later, these benefits are not now considered. We assess the value of the land at sixty dollars per acre.

The area expropriated is nine and 66-100 acres. The topographical engineer for the road has limited it to that number of acres. The defendant claims only sixty feet in width, less than the usual width, it is true, but the record does not disclose that the defendant occupies more than that number of feet.

We pass to the next item for which an amount is claimed, consisting of twelve acres planted in cotton that the defendant ploughed up and destroyed. Plaintiff's son and general agent, in managing her plantation, fixed the number of acres at much less than twelve. The ground had only been broken up, ploughed, and planted in cotton. Keeping account of the cost of the seed planted per acre and the cost of the ploughing per acre as shown by the testimony, we find no reason to disturb the verdict of the jury as to this amount.

Plaintiff claims the value of four bales of cotton destroyed by defendant by hauling ties across her land. She was allowed the value of two bales. an estimate that has the appearance of being sustained by the weight of the testimony.

The two remaining items are for injuries growing out of the asserted obstructions of the drains of the place and for inconvenience in crossing on the place from and to the land separated by the railway. The testimony is conflicting. The witnesses for the plaintiff testify that about five hundred dollars is the amount of the damage arising from this cause, while those for the defendant testify that the two crossings constructed by defendant afford ample facility for crossing over the embankment from one portion of the place to another. We are led to conclude from the testimony that plaintiff's son who seems to have had charge of the place, did not object to the line of railroad as laid over and across the place. Although defendant's witnesses have sworn as just before stated, it may be that at times some inconvenience is felt owing to the fact that all hauling from one place to the other must be at and over the two crossings in question. It would be difficult, we must say, to fix the amount of damage on this score. Our judgment, were we to allow damages, would not be sustained by any direct testimony pointing to items of damages suffered.

With reference to the drain, we are equally at a loss for positive data upon which to base our decree. True, some of the witnesses have indicated a proportion of difference between the crop on the west side of

the place, being southwest of the road, and the portion of the crop on the east side which plaintiff insists is not sufficiently drained since the railroad embankment was constructed. The witnesses about this also greatly disagree. The different views expressed by the witnesses for the defendant and plaintiff respectively are diametrically opposed one to the other. Plaintiff found without difficulty a basis for a correct estimate of damage suffered. Defendant was equally as positive not only that damage had not been suffered but that the drain had been considerably improved, its theory being that the water drains down the pit along the embankment to the south follow the natural declivity. These conflicting theories and ideas are not convincing. We do not suppose that the damage to the drainage was immense on the one hand or that, on the other, plaintiff's drain was improved. The lands on the west side were more recently opened to cultivation. They are fresher and, we understand, produce more and perhaps a better grade of cotton. Defective drainage, in our judgment, is not the direct cause of the difference in production. Besides nearly all these crops were cultivated with laborers on halves, thereby reducing the damage, if any was suffered, by one-half.

With reference to the theory of improvement in the drainage as just mentioned, it leads to the conclusion that culverts which defendants placed in the embankment were useless and that the side ditches along the road would suffice. This is not insisted upon by defendant. It has constructed a number of culverts in the embankment. Taking account of the changes an embankment two feet in height, as this was, occasioned, as testified to, it is reasonable to suppose that inconvenience and damage have been suffered. The measure of the damage is not determinable with any reasonable degree of certainty. It is about as indeterminable from the point of view of satisfactory certainty as defendant's claim that its railroad has caused an advance in price to the extent of, at least, twenty-five *per cent*. One is about as unsettled as the other. No question but that the railroad has greatly aided, indirectly, in developing agricultural resources and that lands have, to some extent, enhanced in value, but we are informed by the testimony that their value was improving before the railroad line was run; that a system of levees built by the State protected these lands from overflow and that, immediately after, prices enhanced. The weight of the testimony does not convince us that the railroad alone is entitled to the whole credit for advances in price.

As the plaintiff's claim for damages for inconvenience in crossing the embankment and to its drainage is not by any manner of means reasonably certain and as this is also true of defendant's claim for accruing benefits, we have concluded that one is, or should be, considered as equivalent to the other. After having established this solution, we do not think there remains anything to the credit of defendant to be deducted from the value of the land and for that reason have allowed a price equal to its value. We have considered the application for a new trial made by plaintiff on the ground of misconduct on the part of the jury. The grounds are not sustained and the issues are not such as to require other delays to pass upon the rights of the parties in interest. No complaint was timely urged both as relates to an asserted interest of one of the jurors, nor as to the improper conduct of any of the jurors.

For these reasons, the judgment appealed from is amended by increasing the amount allowed for the value of the land to sixty dollars per acre, making a total for the land of five hundred and seventy-six ($576.00) and thus increasing the total judgment to seven hundred and fifteen and 20-100 dollars.

As amended, the judgment is affirmed.