REGAN, Judge.
The plaintiff, St. Bernard Parish School Board, instituted this expropriation suit against the defendant, Carolyn Park, Inc., endeavoring to be declared the owner[1] of approximately 3.33 acres of the defendant’s land for the purpose of constructing an elementary school with allied facilities, and insisted that the existing schools were inadequate to accommodate the children from the Carolyn Park area; that there was no additional land in this area suitable therefor, and that $16,666.67 was adequate compensation for the property.
The defendant answered and conceded that the plaintiff possessed the authority to expropriate land to be used for school purposes; but generally denied the plaintiff’s other allegations, asserting that there were other tracts of land available and more suitable. In the alternative, it pleaded the land sought to be expropriated was valued at $110,726.00, and that its most profitable *352 use was its conversion into a residential subdivision.
From a judgment expropriating the 3.33 acres to plaintiff upon payment of $30,000 to the defendant, the defendant has prosecuted this devolutive appeal endeavoring to have the judgment increased to the sum of $73,454.34. The plaintiff has answered the appeal, requesting that the judgment be reduced to $16,666.67.
The record reveals that on May 14, 1958, the St. Bernard Parish School Board adopted a resolution empowering its president, Irvin J. G. Janssen, to acquire for public school purposes private land owned by the defendant through the medium of expropriation proceedings since a dispute had developed relative to the amount of consideration to be paid therefor. The land sought is located in the rear portion of the subdivision and involves about twenty lots, or 3.33 acres in squares 36 and 37, including a part of Chinchilla Drive; the area is generally bounded by Patricia, Perrin, Llama Streets and Cougar Drive, which are located in the Carolyn Park Subdivision of St. Bernard Parish. This subdivision begins at the St. Bernard Highway and the property from which it was developed extends in a northerly direction to the forty arpent line.
In 1952, Frederick J. Sigur, a real estate broker and developer of Carolyn Park, and now president of the defendant corporation, obtained for $1,000 an option to purchase from Mrs. Jane F. Perrin 95.67 acres now enclosed in the subdivision. The option was renewed annually until it was sold by Sigur and his partners on October 6, 1955, to the defendant corporation. On January 19, 1956, the defendant corporation exercised its option and purchased the property for $83,546.64, or at a cost of about $900 per acre. In addition, $1,000 was paid to Mrs. Perrin on January 15, 1958, for a quit claim deed to property defendant purchased on March 12, 1958, from Robert Francioni et al. This property was comprised of 11.31 acres and sold for a purchase price of $44,848, or about $4,000 per acre.
Joseph J. Krebs, Jr., a civil engineer and Frederick Sigur testified that the St, Bernard Parish Police Jury had approved plans for the entire subdivision, and that the engineering costs had already been paid, and that if the land were expropriated, redesigning of the portion effected would be necessary, at a cost of $560, revision of utilities would amount to $2,171, and additional legal fees in the amount of $350 would be incurred.
Sigur further related that the defendant was in the process of making more lots suitable for residential purposes when this expropriation proceeding was initiated. It had “cleared” the lots sought, and trees and stumps which had been uprooted were made ready for disposal by burning. No “fill” had yet been placed upon the land, although that would be necessary as the land was conced-edly below sea level.
He also asserted that contracts had been let for off-site and on-site improvements and some of them had been partially completed. The paving of Patricia Street had been started, and the main water and sewerage lines had been laid to accomodate this street.
At the time of the trial, the defendant had sold 310 lots in Carolyn Park, mostly to young married couples with small children. In its newspaper advertisements extolling the virtues of this subdivision, the defendant emphasized on several occasions the advantage of having good schools in the area, which were to be provided by the parish.
There exists no dispute as to the need for a school, or as to the authority of the plaintiff to expropriate private lands for this purpose; nor does the defendant now persist in asserting that there are other more suitable sites available for the school. The only question now posed for our appellate consideration is the correctness of the amount of compensation awarded to the defendant for the 3.33 acres of land expropriated by the plaintiff.
*353 To arrive at an equitable valuation, the plaintiff relies upon the cost of the land acquired from Mrs. Perrin at $900 per acre; the cost of land acquired from Francioni, et al. at $4,000 per acre, and a sale of comparable neighboring land by Frank H. Schnell to Ridgeland Terrace, Inc., in December 1954, of 29.37 acres at a cost of $111,300 or an average of about $3,800 per acre, all of which were introduced into evidence.
Janssen, plaintiff’s president and Chairman of the Board of the St. Bernard Bank and its official appraiser for loans for fifteen years, testified on behalf of plaintiff. In evaluating the 3.33 acres, he thought that the cost of $900 per acre in the Perrin sale was too low, and the cost of $4,000 per acre in the Francioni sale too high. He then referred to a long-term lease entered into by Mrs. A. Sidney Nunez with Kaiser Aluminum Co. in December of 1953, involving 67^4 acres for a rental of $25,000 a year, and predicated on these facts, he expressed the opinion that it possessed a current market value of $3,500 per acre. He therefore concluded by evaluating the land in dispute at $3,500 per acre.
The defendant qualified as experts two realtors and appraisers, Max Derbes, Jr. and Omer F. Kuebel who predicated their evaluation of the property on the highest and most profitable use thereof, which in their opinion was for residential purposes. Kuebel valued the 3.33 acres at $70,150; Derbes value thereof was $70,400. He testified he had taken into account the exploding population of St. Bernard Parish within the last few years, the increase of land value as the result of the success of Kaiser Aluminum and other enterprises, and the scarcity of land on the open market in that parish. He explained that the Perrin and Francioni sales were not persuasive as to the actual value of the acreage sold because of the surrounding circumstances, which in essence was to the effect that these sales were not between a willing seller and a willing buyer on the open market. He had, however, considered the 1954 sale to Riverland Terrace in reaching his valuation.
The defendant’s counsel attempted to introduce into evidence agreements to sell other lots in the subdivision several hundred feet removed from the land expropriated, but was prohibited from doing so when counsel for the plaintiff interposed an objection predicated on the fact that these were improved lots, and hence not comparable.
The plaintiff contends the land in question is wet, raw and below sea level[2] and should be valued as such, and adequate consideration therefor would amount to the sum of $5,000 per acre or $16,666.67 for the 3.33 acres.
Defendant, on the other hand, maintains the lots should be valued as residential subdivision lots [3] and is entitled to a judgment in the amount of $73,454.34[4].
The foregoing evidence reveals that only questions of fact were posed for the trial court’s consideration. The judge thereof found as a fact the land was worth $30,000 and although he prepared written reasons for judgment, no explanation appeared therein as to the method used in reaching this conclusion. Suffice it to say, however, the trial court did not find that the land was raw and undeveloped as contended by the plaintiff, nor of the improved status as maintained by the defendant.
The only question which this appeal has posed for our consideration is whether that *354 finding of value by the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
Counsel for the defendant assigns six specifications of error committed by the trial court which in substance are that it erred in awarding compensation for the land not valued at its highest and most profitable use, that is, as a residential subdivision.
“ * * * the rule is well settled in condemnation cases that the most profitable use to which the land can be put, by reason of its location, topography and adaptability, will be considered as bearing upon its market val-^0 H*
* * * * * *
“ * * * Article 2633 of the Civil Code, in speaking of true value, contemplates, of course, that the criterion to be used in expropriation proceedings in arriving at the basis for assessment is market value—that is, the price which would be agreed upon at a voluntary sale between a willing seller and purchaser, taking into consideration all of the available uses of the land. * * *" [5]
Therefore, in this case we must examine the evidence adduced, which we have related hereinabove, in order to determine the most profitable use to which the land could have been put in the year of 1958, and also the price for the property that would probably have been agreed upon by a willing buyer and seller had a sale thereof been consummated at that time.
The record clearly discloses that the highest and most profitable use that the defendant’s land could have served in 1958 was its conversion into a residential subdivision.
The trial court in addition to other criteria of value had posed for its consideration the appraisals made by three experts, one for plaintiff[6] and two for defendant.
Janssen, as we said before, appeared on behalf of the plaintiff and considered the property expropriated from the aspect of acreage and unimproved land and as possessing no immediate value as a subdivision, and therefore appraised it as having a market value of approximately $3,500 per acre, using as a guide a lease and sales of unimproved land in the vicinity.
The two experts who appeared on behalf of the defendant, Derbes and Kuebel, evaluated this property in excess of $70,000 and predicated their appraisal on sales of lots which were about 2,000 feet removed from the expropriated property. These lots possessed off-and on-site improvements and were located on higher ground, near Claiborne Avenue, a main thoroughfare in the subdivision, and were obviously much more desirable. Thus, these lots were not comparable to those that had been expropriated. This last observation would likewise apply to the agreements to sell improved lots in the vicinity which the trial judge excluded from the evidence but all of which, nonetheless, appear, including the prices thereof on the “Composite Plan Showing Carolyn Park Subdivision and Carolyn Park Subdivision Extensions 1 and 2” which was introduced into the record without objection.
The trial court, after exercising a broad latitude of discretion in weighing all of the evidence adduced herein with respect to valuation, concluded that the property was worth approximately $9,000 per acre, and we fail to detect error in this conclusion.
We are also of the opinion that severance damages, if any, incurred by the *355 defendant will be more than off set by virtue of the construction of a new elementary school which will undoubtedly prove to be of special benefit to other property owned by the defendant in this subdivision.[7]
We have carefully considered the whole record and from our appreciation of the evidence inscribed therein, we are convinced that the trial judge placed a fair and reasonable value on the property and that the award made by him to the defendant represents “just and adequate compensation” for that part of its property expropriated, which is what it is entitled to under the law.[8]

. Plaintiff's ownership would be subject to a mineral reservation in favor of the defendant, provided there was no exploration for minerals on tbe land in question that would damage plaintiff’s improvements.

. The evidence reveals that this acreage would require the expenditure of about $12,000 for filling to erect a school building thereon.

. Sigur testified that other lots measuring 50' x 110' -which the defendant had used • for residential purposes, cost approximately $360 to fill.

.This figure represents $59,000, value of land taken; $3,081.34 as severance damages; and $11,373 improvement cost expended or to be expended.

. City of Shreveport v. Abe Meyer Corp., 1951, 219 La. 128, 52 So.2d 445, 447.

. The trial court obviously accepted Jans-sen as an expert appraiser of property located in this parish since he had acted for 15 years as official appraiser, for loan purposes, for the St. Bernard Bank

. Louisiana Highway Commission v. Grey, 1941, 197 La. 942, 2 So.2d 654.

. LSA-Const. Art. 1, See. 2.