220 So.2d 462 (1969)
LOUISIANA POWER AND LIGHT COMPANY
v.
George A. LASSEIGNE, Jr., et al.
No. 3191.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1969.
Rehearing Denied April 7, 1969.
*464 Vial, Vial & Lemmon, Harry T. Lemmon, Hahnville, Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart, Chas. King Mallory, New Orleans, for plaintiff-appellee.
Becnel & Kliebert, Thomas J. Kliebert, Gramercy, for defendants-appellants.
Before SAMUEL, HALL and JOHNSON, JJ.
JOHNSON, Judge.
The main issue in this case is to determine whether the plaintiff, a public utility corporation, the holder and user of a right of way across the land of defendants since 1929, can acquire by expropriation a new right of way at a new location across the same tract of land and offset the value of the new right of way by the release and extinguishment of the old or existing right of way. After trial in the 29th Judicial District Court in St. John the Baptist Parish, judgment was rendered on November 30, 1962, in favor of plaintiff. Defendants have appealed.
Plaintiff is authorized and empowered by law, R.S. 19:2(9), to expropriate and acquire property including servitudes for use in its business of generating, transmitting and selling electricity to the public upon paying just compensation therefor according to law. On December 11, 1929, plaintiff acquired a right of way 100 feet wide from the late George A. Lasseigne across a tract of land of about 28 acres, then owned by him, bounded on the north by U.S. Highway 61 (now known as the Airline Highway) and on the south by the L & A Railroad in St. John the Baptist Parish. The said George A. Lasseigne was the ancestor of the defendants herein who are the present owners of that land. The plaintiff constructed on that right of way an electric power line on wooden poles and plaintiff has continually used the said right of way.
Plaintiff's petition alleges that the public convenience and necessity require that plaintiff acquire a new right of way 100 feet wide across the same tract of land, said right of way to be located along the north side of the L & A Railroad for the purposes of constructing and maintaining an electric transmission line with all proper appurtenances. It is further alleged that the present power line on the existing right of way has a limited capacity of transmitting electricity on wooden H-frame structures, which capacity and structures are outmoded by more efficient engineering standards, by increased population, industrial and commercial development in the parishes up the Mississippi River from New Orleans, and that it is necessary to double the power circuit with transmission lines on steel towers in order to render adequate electric services and to increase public safety, reliability and economy of service, all of which will aid and promote public welfare. Another reason it is desired to locate the new right of way along the railroad is that the right of way at the railroad will be straighter with less curves and corners and of more uniform width than the existing right of way near the Airline Highway. Also the right of way deeds executed by George A. Lasseigne and other landowners contain a stipulation that *465 the poles to be erected are "to be located on ditches," which stipulation plaintiff asserts is a hindering restriction.
Plaintiff further alleges that it has sought by negotiation to exchange by release and extinguishment of the existing 100 foot right of way across the property of defendants for a new 100 foot right of way at the railroad, but plaintiff has been unable to effect the exchange because defendants demand the payment of money in addition to the release and extinguishment of the existing right of way.
Plaintiff prays for judgment adjudicating the new right of way along the railroad to plaintiff and, as just compensation for the same and for any damage which defendants may sustain in consequence of this expropriation, that defendants be ordered to accept the release and extinguishment by plaintiff of the existing right of way near the Airline Highway.
Defendants filed exceptions, which were overruled, and an answer which generally denies all the allegations of plaintiff's petition and further avers that the exchange sought by plaintiff does not fall within any category enumerated in the provisions of R.S. 19:2; that this attempt to take the property of defendants amounts to taking property without due process of law and in violation of the Constitution of Louisiana; that plaintiff already has an existing servitude fully capable of fulfilling plaintiff's present and future needs, and, in the alternative, if the court grants to plaintiff a new right of way, defendants claim payment for the land taken and for damages to the remaining land.
The trial court rendered judgment in favor of plaintiff granting a right of way 100 feet wide for the construction, operation and maintenance of an electric transmission line on steel towers across the property of defendants along the railroad upon recording a cancellation, release and extinguishment by plaintiff of the existing right of way near the Airline Highway, which cancellation, release and extinguishment must stipulate that the cancellation, release and extinguishment shall be effective immediately upon removal of all electric facilities from the existing right of way but in no event more than eight months from the date judgment becomes final, and specifically reserving to defendants all claims for any damages suffered by reason of the continued use of the existing right of way during the period from the date of the judgment to the removal of electric facilities therefrom.
Property or an interest therein or the right to the use thereof can be taken by expropriation, not primarily or solely to facilitate the business operation of the condemnor, but for public convenience and necessity. That plaintiff has the right to the use of a servitude or right of way across the property of defendants cannot now be denied. Plaintiff has enjoyed possession and use of that right of way for more than one-third of a century. Plaintiff is not entitled to, and it does not ask for, retention of two rights of way. To enforce the judgment rendered by the trial court will amount to just that for a limited time, but we see no way to avoid it if plaintiff is to be granted a new location under any arrangement. The exchange cannot be effected simultaneously. Therefore, the question for our determination is whether the change in location is necessary to satisfy the public convenience and necessity. The testimony of plaintiff's professional engineers and right of way agents is that the existing right of way from plaintiff's Little Gypsy generating station in St. Charles Parish running in a westerly direction through St. John the Baptist Parish is not uniform in width on various properties; that on some properties there are restrictions as to location of poles; that the foundation area of the modern steel towers is larger than that required for the wooden poles, and that the new right of way will afford greater safety for the landowner and the public. These facts appear reasonable and will justify the change in location. *466 Defendants offered no evidence to disprove these conditions.
Defendants have alleged and argue that plaintiff's suit to change the location of the right of way is not prompted by public necessity and convenience nor to provide a straighter course for the new line of increased capacity, but the new right of way is sought to satisfy the desire of Gulf States Land and Industries, Inc., a large landowner and developer in St. John the Baptist Parish, which land is traversed by the existing right of way of plaintiff. Plaintiff's witnesses, Mr. Marse and Mr. Steiner, testified that after many new industries were established along the Mississippi River and the area gave promise of further land development, increased population and industrial and commercial activity, it became apparent that greater capacity in the electric power line of plaintiff would be necessary to adequately serve the public. Therefore, in 1956, plaintiff's engineers designed a more modern line on steel towers and that in order to eliminate some restrictions, curves and corners present in the existing right of way plaintiff sought the new one along the railroad, and began taking conveyances of rights of way from property owners by private agreements in 1957. The said witnesses explained that after these steps had been taken by plaintiff, Gulf States Land and Industries, Inc., approached plaintiff with an offer that in order to speed up consummation of such change Gulf States Land and Industries, Inc., would undertake to acquire for plaintiff a new right of way from the many landowners. There are some 130 landowners along the route. Timing was important to Gulf States for the reason that the sooner it could get the old right of way across its land removed, the development of such land could be more advantageously pushed forward. Plaintiff made an agreement with the Gulf States Land and Industries, Inc., to do that and we see nothing improper or illegal in such arrangement. There is nothing unusual or illegal in a condemnor engaging a third party to assist in obtaining rights of way agreements from landowners. We do not find that by these actions the plaintiff has misused or abused its statutory right to expropriate.
This brings us to the main issue as stated in the first paragraph of this discussion. We quote Article I, Section 2 of the Louisiana Constitution, as follows:
"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
Plaintiff offers to release and extinguish the existing right of way in full consideration and payment for the new location of the right of way along the railroad. Such an exchange cannot be made legally by court order when there is resistance on the part of the property owner. The above provision of the Constitution is to protect and preserve the right of private ownership of property and to prevent the arbitrary taking of private property without prior payment of just compensation by or on behalf of an all powerful government, whether that governing authority be local, state or national.
Upon proof of necessity, the governing authority and certain public serving concerns, definitely and precisely authorized by law, can take private property to serve a public need by first paying just compensation. Enforced exchange of properties, including the release of an existing right of way in payment of a new location, is not the payment of just compensation when such exchange is resisted by the owner of the land held in fee. The owner of land can make legally such an exchange voluntarily on whatever terms the owner in his discretion may deem proper, or the owner can give the right of way without any consideration, but neither the Constitution nor any statute of this state requires the owner to do so, not even when the *467 condemnor desires it and not even if the part offered to be released is of greater value than the new location to be taken.
The parties here are private citizens of Louisiana, governed by the Louisiana Constitution and pertinent statutes. That part of the Fifth Amendment of the United States Constitution on this subject is very brief and the language is more general, as follows:
"* * * nor shall private property be taken for public use, without just compensation."
The Louisiana Constitution clearly indicates that just compensation must be paid in money. Even the loose language of the United States Constitution is generally interpreted to mean that the payment must be in money. For example, in a late Fifth Circuit United States Court of Appeals case, United States v. Michoud Industrial facilities, 322 F.2d 698, (703), the United States condemned 1000.22 acres of land and 22 buildings in New Orleans. As a prelude and the basis of a quite lengthy discussion of values the court said this:
"No authority need be cited for the proposition that in a condemnation proceeding such as that here before the Court the owner of the property taken is entitled to just compensation and that within the meaning of the Fifth Amendment to the Constitution just compensation is the fair market value of the property at the time of taking contemporaneously paid in money."
The same court, comprised of a different panel of judges, in a Florida case, Cameron Development Co. v. United States, 145 F.2d 209, said exactly the same thing.
The United States District Court in United States v. 3295.61 Acres of Land, 83 F.Supp. 626 (Texas), said exactly the same thing.
Anyone seeking a comprehensive discussion of almost any point of law is very likely to find it in Corpus Juris Secundum with citations and authorities to support its textual pronouncements. In this connection in 29A C.J.S. Eminent Domain § 191 c, page 837 et seq., on medium of payment, there is this statement:
"* * * usually payment for property taken under the power of eminent domain must be made in money or cash unless there is an agreement to the contrary. * * * While some statutes provide for the substitution, in certain cases, of other real property where real property which is already devoted to certain public purposes is taken, usually the owner cannot be compelled to accept other property in payment, as, for example, other lands, or a grant of a right of way over adjoining land, * * *" (emphasis supplied).
The plaintiff power company offers this exchange as a means of payment for the new right of way on the basis that the taking of the new right of way will result in a release of the existing right of way and that this release will thereby enhance the value of the remaining land of defendants, even in an amount greater than the value of the new right of way. The Louisiana rule on that subject is recited in Vol. 3, Nichols on Eminent Domain, § 8.6211(19), pp. 127-128, as follows:
"The rule that benefits could be set off from the damages to the remaining land, but not from the value of the land taken, was established in Louisiana by judicial decisions. Benefits were allowed to be set off without any requirement that they be special for many years, but it was finally determined that only special benefits could be lawfully set off.
"It is established law of this state that benefits may be set off against damages under the damage clause of the constitution. * * *" (Emphasis added.)
On the statement that the rule that benefits cannot be set-off from the value of the land taken was established by judicial *468 decisions, these cases are cited: Town of Golden Meadow v. Duet, 121 So.2d 288; Parish of East Baton Rouge v. Edwards, La.App., 119 So.2d 175, citing Treatise; State Through Department of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261; City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349; State v. Cooper, 213 La. 1016, 36 So.2d 22; Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286; Shreveport Traction Co. v. Svara, 133 La. 900, 63 So. 396; New Orleans, Opelousas & G. W. R. R. Co. v. Lagarde, 10 La.Ann. 150.
On the rule that the value of special benefits may be setoff only against severance damages, these additional cases are cited: State v. Hayes, La.App., 150 So.2d 667; City of Natchitoches v. Cox, La.App., 135 So.2d 302; State Through Department of Highways v. Atkinson, La.App., 135 So. 2d 381; St. Bernard Parish School Board v. Carolyn Park, Inc., La.App., 131 So. 2d 351; State Through Department of Highways v. Boyer, La.App., 130 So.2d 738; East Baton Rouge Parish Council v. Koller, La.App., 94 So.2d 505; Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654; Louisiana Highway Commission v. Hoell, 174 La. 302, 140 So. 485; Texas Pacific-Missouri Pac. Terminal R. v. Elliott, 166 La. 347, 117 So. 275; Manning v. City of Shreveport, 119 La. 1044, 44 So. 882, 12 LRA(NS) 452; Abney v. Texarkana, S. & N. R. Co., 105 La. 446, 29 So. 890; N. O. Pacific Ry. Co. v. Gay, 31 La.Ann. 430; Vicksburg, S. & T. R. Co. v. Calderwood, 15 La.Ann. 481.
As applied to this case, we understand this rule to mean that if the taking of the new right of way at the railroad creates a severance damage to the remaining land, the value of any special benefits to defendants flowing from the release of the old right of way could be offset against the severance damages, but neither the value of the old right of way nor the value of any benefit resulting from its release can be setoff against the price or value of the new right of way located along the railroad.
The subject of setoff of benefits against the value of land taken is discussed in section 8.6206 of Volume 3 of Nichols on Eminent Domain, page 90 et seq., where it says that some states by constitutional provisions have liberalized the rule to allow any special benefits to be applied toward the payment of any damages plus the value of the land taken. In other states, including Louisiana, the setoff of benefits against the compensation for the value of the land actually taken "is a violation of the fundamental requirement that compensation must be paid in money, and that, as benefits are not money, the statute which authorizes the payment of any less sum than the market value of the land actually taken is unconstitutional," citing Louisiana Highway Commission v. Giaccone, supra. That Louisiana case held that appreciation in value of the land remaining may not be considered as a setoff against the value of the land actually taken, citing Louisiana Soc. for Preven. of Cruelty to Children v. Board of L. Com'rs, 143 La. 90, 78 So. 249, 254, and quoting from Shreveport R. Co. v. Hinds, 50 La.Ann. 782, 24 So. 287, 289, and from N. O. Pacific Ry. Co. v. Gay, supra.
Nichols on Eminent Domain further points out that, while the court decisions with reference to this principle are not uniform, the courts, which have denied the setoff of the value of benefits resulting to the landowner against the value of the land actually taken, do allow such setoff against any damages which the taking may cause to the remaining land. In this state our courts, in denying setoff of benefits against the value of the land taken, have merely followed the codal and constitutional provisions of our state. The formula given by Nichols, Vol. 3, page 91, is applicable in this state. It is as follows:
"Value of land taken + (Damage to remainder - special benefits) = just compensation."
*469 The new location at the railroad will be an entirely new easement. Plaintiff may expand or enlarge the use of the existing right of way without the owners' consent and without any payment of compensation, provided such enlargement is the same character of use for which the right of way was taken, and provided that such enlarged usage amounts only to an advancement of the original purpose of the right of way. The enlarged use of the existing right of way would be an exercise of the easement. Plaintiff can even construct an additional power line on the existing right of way, providing there is room for it. Plaintiff is asking to expropriate the new right of way to more efficiently and economically serve the public and to increase and enlarge the structures that support its power line. Under our law the method here employed by plaintiff, to expropriate a new right of way, is proper but the manner of paying just compensation by the exchange offered is improper and cannot be permitted without agreement by defendants. As early as 1806 in Commonwealth v. Peters, 2 Mass. 125, it was held that compensation in such a case must be paid in money. We quote the following from 20 ALR 3rd 884:
"In Commonwealth v. Peters (1806) 2 Mass. 125, the court of sessions was held to have illegally taken land to enable a condemnee to build a new dam because his existing dam, used to raise a pond for his mill, would be rendered useless by a proposed highway. However, the illegality of the substitute condemnation was based not on its unconstitutionality as a condemnation for private use, but rather on the fact that the statute giving the court of sessions the power of eminent domain provided no authority to give anything but money as compensation."
Plaintiff in this case suggests that the abandonment of the old right of way will be of value to the defendants, and plaintiff seeks to setoff that benefit against the price of the new right of way at the railroad. This has been the subject of divergent opinions by courts throughout the land. The setoff has been allowed on the theory that there can be no constitutional objection to assessment of benefits against the value of land taken. On the other hand, other courts say that the property owner is entitled to receive "full compensation for the land taken without deduction of the value of the benefits." These opposing theories are discussed with citation of authorities in 18 Am.Jur., § 301, page 945 et seq., where it is also noted that "a more generally accepted doctrine, however, is that land actually taken must be paid for in full without reference to the benefits, and that special benefits only may be deducted from damages to the remaining land." (Emphasis added). We believe this latter view to express the meaning of the Constitution, laws, and court decisions of this state and to be more in keeping with prevailing authorities in the other states, and we shall adopt it here. See Nichols on Eminent Domain, Vol. 3, §§ 8.62, 8.6205, 8.6206, 8.6207, 8.6211(19).
Iti is our opinion that when plaintiff abandons and releases the existing right of way it gives nothing of value to defendants. This will be discussed later. To permit plaintiff to setoff any advantage and enhancement of the remaining land (if any) resulting from the release, cancellation and abandonment of the old right of way against the value of the new right of way at the railroad would be contrary to the positive provisions of Louisiana law. In the first place the Constitution says clearly that the compensation must be paid before the condemnor can take possession of the new right of way. Statutory provisions say the same thing. Civil Code article 2629 provides that:
"This price ought to be paid to the owner before the expropriation, that is to say, before he had delivered the possession, or it has been finally taken from him, in case of resistance."
In Charles Tolmas, Inc. v. Police Jury of the Parish of Jefferson, 231 La. 1, 90 So.2d 65, the police jury actually, physically *470 took possession with resistance by the landowner and without prior payment, the court held that the taking was illegal and was required to be put aside because of the failure to comply with the provisions of the Constitution that require that property shall not be taken except for public purposes and after just and adequate compensation is paid.
Civil Code article 497 requires payment for the property taken and remuneration for any damages caused thereby.
Civil Code article 2633 provides that the true value of land taken must be paid without deducting any amount for the benefit derived by the owner. In this case, if there is any advantage or value in the release of the old right of way, this article prohibits the allowance of the value of that benefit as a credit against the value of the new right of way. The payment provision of Civil Code article 2634, as amended, clearly indicates that our legislature contemplated that the full market value of the land taken is the compensation which shall first be paid in full in money before the expropriating party is entitled to possession of the land.
As already stated, if any definable value to defendants results from the release of the existing right of way, it could only be applied as a setoff against any severance damage to the remaining land resulting from the taking of the new right of way. Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885. Therefore, the main issue is the attempt by plaintiff to apply any value of the release of the existing right of way in payment for the land in the new right of way at the railroad, which exchange defendants are resisting and demanding payment in money. The Constitution of Louisiana and the provisions of the statutes and our jurisprudence on the subject require that in this proceeding the payment must be made in money.
In granting the exchange the trial court relies on the case of United States v. 1,000 Acres of Land, Etc., 162 F.Supp. 219, in which the United States District Court in New Orleans held that the value of the special benefits could be applied to pay for the land taken and for any severance damages to the remainder. We prefer to follow the Fifth Circuit Court of Appeals decisions in such cases as Michoud, supra, and Cameron, supra, and particularly the Constitution, laws of Louisiana and the Louisiana decisions as well as other reliable authorities cited above, that the value of the special benefits (if any) cannot be applied to pay for the land taken.
By this proceeding the plaintiff is taking an entirely new right of way at a new location for the same use for which plaintiff has occupied the old right of way near the Airline Highway granted to plaintiff by George A. Lasseigne by deed December 11, 1929. After the judgment in the trial court of November 30, 1962, plaintiff executed in writing on January 9th, 1963, a "release, extinguishment and abandonment" of that right of way acquired from George A. Lasseigne in 1929, which right of way sometimes is herein referred to as the old or existing right of way. This release provides that it would become effective immediately upon the removal of all electric facilities of plaintiff from the right of way or eight months from the date the judgment of the district court becomes final, whichever occurs sooner, in accordance with the district court judgment. The appeal in this case now before this court being devolutive in form, we assume that the plaintiff has taken possession of the new right of way and has removed the facilities from the old right of way.
Mr. Max J. Derbes, Sr., an appraiser for plaintiff, fixed the value of the old right of way along the Airline Highway containing 2.36 acres, at $3,732.19 per acre or a total in round numbers of $8,808.00. Mr. Gerald Viator, appraiser for plaintiff, gave the existing right of way a net value of $7,517.00. Mr. Francis Fulton, expert for defendants, appraised the old right of *471 way at a value of $4,000.00 per acre, or a total of $9,440.00 from which he deducted 50% because it is only a servitude, leaving a total value of the 2.36 acres at $4,720.00. Mr. Fulton makes a further deduction from the value of that 2.36 acres because of the presence of Shell Oil Company pipe line servitude over part of the plaintiff's old right of way. After this deduction he gives the old right of way a net value of $2,652.00.
As stated above, we give the abandoned right of way no value for the reason that the defendants already own the land in fee and when plaintiff executed its release to defendants confusion took place and defendants are entitled to full, unrestricted possession of the 2.36 acres insofar as this plaintiff is concerned.
Civil Code article 783 lists seven methods of extinction of servitudes. Three of these methods are applicable here, as follows:
"3. By confusion.
"4. By the abandonment of that part of the estate which owns the servitude.
"5. By the renunciation of the servitude on the part of him to whom it is due, or by the express or tacit remission of his right."
Civil Code article 813 reads as follows:
"The renunciation or abandonment of the land extinguishes the servitudes charged on it, of whatever nature they may be, because the owner of the estate to which the servitude is due is bound to accept the abandonment, which produces in his hand a confusion which puts an end to the servitude."
Civil Code article 814 is as follows:
"It is not necessary to produce a discharge of the servitude, that the proprietor of the estate which owes it, should abandon the whole estate; it suffices, if he abandon the part on which the servitude is exercised."
Civil Code article 816 provides as follows:
"Servitudes are also extinguished by the renunciation or voluntary release of them by the owner of the estate to which they are due.
"This renunciation or release may be express or tacit."
See also State v. Bordages, La.App., 156 So.2d 617; Carlon v. Marquart, La.App., 10 So.2d 246; Ayer v. Kirkwood, 9 La. App. 306, 119 So. 475; Geiser v. City of New Orleans, 167 La. 347, 119 So. 73; Passera v. City of New Orleans, 167 La. 199, 118 So. 887.
The evaluation assigned to the 2.36 acres comprising the old right of way by the three expert appraisers was made as if the defendants were granting the right of way to plaintiff at this time, but we are concerned here only with the abandonment of the right of way by plaintiff. In this situation defendants owe plaintiff nothing for its release.
The tract of land owned by defendants in indivision is not as wide at the railroad as it is along Airline Highway and the new right of way contains only 1.90 acres. Mr. Derbes testified that at one time the 28.66 acre tract of defendants was planted in sugar cane and that in his opinion its highest and best use still is for agriculture and cattle grazing, because it is about two miles from the commercial area of the Town of Laplace and that there is an over supply of improved residential lots in that area. Mr. Derbes gives the whole tract of 28.66 acres an overall market value of $2,000.00 per acre. The 9.35 acres of that tract lies within 350 feet of the Airline Highway, which strip along the highway he values at $3,732.19 per acre. The remaining 19.31 acres along the railroad Mr. Derbes appraises at $1,161.26 per acre. Therefore, he appraises the servitude over the 1.90 acres in the new right of way along the railroad at 50% of the fee or $580.63 per acre, or a total *472 of $1,103.00. This appraisal does not add anything for severance damages to the remaining land. Mr. Viator has appraised the proposed servitude of 1.90 acres at $1,190.00 per acre, or $2,261.00, less residential value by the use as a servitude at $500.00 per acre, a total of $950.00, leaving the net appraisement of the new right of way at $1,311.00. He says the best potential use of the land is commercial, though he said there is little or no demand for it at the time.
Mr. Fulton thinks the land is best suited for commercial and small industries. This appraiser values the whole tract at 28.66 acres at $4,000.00 per acre and because the land at the railroad is unrestricted it has the same value as any other portion of the whole tract. The fee of 1.90 acres for the right of way he values at $7,600.00 but reduces that by 50% for use as a servitude, leaving the net value of $3,800.00. He adds to that amount the sum of $1,500.00 as severance damages, making a total for the right of way in the amount of $5,300.00.
This tract of land of 28.66 acres owned by defendants has a frontage along the Airline Highway of 1163.21 feet by a depth on its west side towards the river to the L & A Railroad right of way of 1520.51 feet and a depth on the east side from the Airline Highway to the railroad of 1175.81 feet by 818.2 feet along the north side of the railroad right of way. It is all open, high land of uniform topography. Mr. Derbes cuts off a strip 350 feet in depth from the Airline Highway to which he gives a higher value than his appraisement of the remainder of the tract. It has been stated often that just compensation is the market value of land taken and compensation has been defined "as the price the land will bring when offered for sale by one who desires, but is not required, to sell, and is sought by one who desires, but is not required to buy, after due consideration of all of the elements reasonably affecting the value." Here, the land in the right of way is not taken in full ownership. Its ownership in defendants is being damaged by granting possession and use for a public purpose. In order to find the value of that possession and use it is proper first to determine the value of the fee. Consideration of arms-length recent sales of like property in the vicinity is the best guide. In the vicinity of the land owned by defendants there are several sales of various tracts of various sizes, but in our opinion the most reliable sale was made in August, 1957, by Mrs. Lasseigne of 8.82 acres lying along the east side of the 28.66 acre tract and in fact it was formerly a part of this larger tract. This sale was made for $4,305.46 per acre. There are some other sales of smaller acreage for greater amounts per acre and there are some sales of larger acreage for lesser amounts per acre. Mr. Derbes merely thinks the purchaser of that tract paid too much. He found a value of $2,000.00 per acre for the whole tract with only $1,161.26 per acre for the 1.90 acres at the railroad. Mr. Viator takes an average of the 8.82 acre tract and other tracts of smaller amounts per acre but does not include any sales of larger amounts to find an average, notwithstanding the fact that there are several sales made for larger amounts per acre. His average for the whole tract was $2,004.00 per acre but gives the 1.90 acres at the railroad a value of $690.00 per acre or a total of $1,311.00. Mr. Fulton values the entire tract at $4,000.00 per acre including the 1.90 acre right of way. He considers one sale of 1.2 acres a half mile east toward Laplace at $10,000.00 per acre; two sales across the Airline Highway, one sale of 1 acre, which was made for $20,500.00 and another of 2.5 acres which brought $24,000.00 per acre.
After careful consideration of all of the comparable sales mentioned by the three appraisers we think the sale by Mrs. Lasseigne to Rabalais of 8.82 acres along the east side of the land of defendants is the most reliable and applicable comparable, and we accept it as representing the true value of the land in this locality at that time and not influenced by size or other *473 factors. That sale was made for a total price of $38,000.00 or $4,308.00 per acre. We, therefore, fix the value of the fee of the 1.90 acres for the new right of way at $8,185.00. All appraisers reduced the land value by 50% to find the value of the right of way and by that method we fix the value of the right of way at $4,093.00. The right of way along the railroad will in effect to some extent cut off full access of the remaining land to and from the railroad. Mr. Fulton fixed the amount of severance damage at $1,500.00. We believe that amount to be neither excessive nor inadequate and accept it. Therefore, it is our opinion that just compensation for the new right of way is $5,593.00, which must be paid in money. This amount should have been paid before plaintiff took possession. Not having paid it the amount should bear legal interest from the date of the trial court judgment. Gulf States Utilities Co. v. Ponder, La.App., 204 So.2d 109; Recreation and Park Commission for Parish of East Baton Rouge v. German, La.App., 202 So.2d 469.
For the period of time when plaintiff had or will have possession of both rights of way, the plaintiff should pay for the continued use of the old right of way near the Airline Highway from the date of that judgment until the release of that right of way become or becomes effective. There was no testimony on that subject and reservation of the right to claim such damage will be reserved to defendants.
For these reasons the judgment of the trial court is reversed only in so far as that judgment grants to plaintiff a new servitude and right of way 100 feet wide near the L & A Railroad upon and in consideration of the recordation of a cancellation, release and extinguishment by plaintiff of the existing servitude and right of way 100 feet wide near the Airline Highway as just compensation for the new servitude and right of way, and the judgment is recast in full as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Louisiana Power & Light Company and against the defendants, George A. Lasseigne, Jr., Mrs. Anna May Connell, widow of George A. Lasseigne, Sr., and Doris Lasseigne, wife of Jules A. Carville, granting to plaintiff a servitude and right of way 100 feet in width for the construction, operation and maintenance of an electric transmission line on steel towers with the right of ingress and egress upon the servitude and right of way and on the property of defendants adjacent thereto. This servitude and right of way herein granted is located on the land of defendants, described in plaintiff's petition as follows:
"A certain tract of land, being a portion of the New Era Plantation, situated in Township 11 South, Range 7 East, of the Southeastern Land District of Louisiana, East of the Mississippi River, a portion of which tract has a frontage of 1163.21 feet on the Airline Highway (U. S. 61) and extends in a southerly direction a distance of approximately 1652.21 feet to the right of way of Louisiana & Arkansas Railroad, said tract being bounded on the East by property now or formerly belonging to A. A. Rabalais, and on the West by property now or formerly belonging to Nelson Haydel, et. al.
Said servitude and right of way herein granted is described as follows:
"Commencing at the intersection of the lower line of LaPlace Plantation which is the line between Sections 20 and 21 with the center line of the Louisiana & Arkansas Railroad measure thence N 10° 25' W 166.99 feet along said lower line of LaPlace Plantation thence S 88 25' 17" W along a line parallel to and 165 feet distant from the center line of said Louisiana & Arkansas Railroad a distance of 440.58 feet to the line between Sections 19 and 20 continue S 88° 25' 17" W along said line parallel to center line of Louisiana & Arkansas Railroad *474 a distance of 530.34 feet thence continuing in a westerly direction along the arc of a curve to the right having a radius of 17,530.87 feet on a line 165 feet distant from and parallel to the Louisiana & Arkansas Railroad a distance of 201.86 feet to the line between the property of Lasseigne and the property now or formerly belonging to Amedee Rabalais as delineated on a survey by H. E. Landry, June 28, 1957, to the point of beginning, thence continuing on a curve to the right in a westerly direction having a radius of 17,530.87 feet a distance of 798.92 feet thence N 88° 18' 28" W a distance of 38 feet to the line common to Sections 19 and 38 thence S 23° 15' 37" E a distance of 110.30 feet thence along the arc of a curve to the left in an easterly direction along a line parallel to and 65 feet distant from the center line of the Louisiana & Arkansas Railroad and having a radius of 17,630.87 feet a distance of 818.20 feet to the aforesaid line common to the Lasseigne and Rabalais property thence N 14° 02' W along said line a distance of 102.65 feet to the point of beginning.
"Said property described lies entirely within Section 19 T 11 S R 7 E Southeastern Land District of Louisiana, East of the Mississippi River and is a portion of Tract F and E of the New Era Plantation, St. John the Baptist Parish, Louisiana, and contains 1.90 acres."
It is further ordered, adjudged and decreed that there be judgment herein in favor of defendants, George A. Lasseigne, Jr., Mrs. Anna May Connell, widow of George A. Lasseigne, Sr., and Doris Lasseigne, wife of Jules A. Carville, and against plaintiff the Louisiana Power & Light Company, in the full sum of $5,593.00, with legal interest thereon from November 30, 1962, until paid.
It is further ordered, adjudged and decreed that the rights of plaintiff upon, over and across the right of way described above shall be effective upon the payment of said sum of $5,593.00, together with legal interest thereon from November 30, 1962, until paid.
It is further ordered, adjudged and decreed that the old right of way 100 feet wide of 2.36 acres of land heretofore occupied by the Louisiana Power & Light Company as a right of way across the lands of defendants running approximately parallel to and near the Airline Highway shall be abandoned, released and extinguished by plaintiff effective immediately upon removal of all electrical facilities from that right of way but in no event more than eight months from the date this judgment becomes final.
It is further ordered, adjudged and decreed that there is specifically reserved to said defendants the right to claim any damages suffered by reason of the existence of the aforesaid old right of way near the Airline Highway during the period from the date of November 30, 1962, to the date of removal of the electric facilities by plaintiff from said existing right of way.
It is further ordered, adjudged and decreed that the parties on each side of this suit bear their own costs of these proceedings in the Twenty-Ninth Judicial District Court.
It is further ordered, adjudged and decreed that all costs in both courts shall be paid by plaintiff.
Affirmed in part, reversed in part, and recast.