Statement of the Case.
MONROE, J.
This is a suit for the expropriation of a right of way through certain land belonging to defendant, who appealed from the judgment of the district court to the Court of Appeals, by which tribunal the judgment appealed from was set aside and the case remanded. In its application to this court for the review of the judgment last mentioned, plaintiff alleges that:
“This application presents only pure law question, and your honors are not asked to review the findings on any facts.”
The facts found, and the reasoning and conclusions upon the law, as applied thereto, by the Court of Appeals, are stated and expressed by that court as follows:
“The piece of land expropriated — approximately one-half an acre — is part of a five-acre tract, somewhat southeast of Shreveport, on the line of the K. C. S. Railroad. It * * * is in the shape of a parallelogram, 748 feet long by 291 wide. It is between Shreveport and the Cedar Grove factory site, or subdivision, 1 y2 miles from the city limits, and 1 mile from the factory site. The plaintiff’s line, traverses the eastern end of the tract, in a slightly oblique direction, from' north to south, and the right of way is 60 feet wide. The land slopes toward the east, and .is considerably higher in the middle than it is on the north and south, and hence the dump, or roadbed, will be some 10 feet high as it enters the land from the direction of Shreveport, 3 feet in the middle, and 10 feet on the south. On the east side of the dump, the elevation, from the level of the ground, will be somewhat higher. A narrow strip — approximately half an acre — is severed from the main body and is left in a somewhat triangulár shape.”
The court cites the testimony of one witness, to the effect that, in the absence of the railroad, the land in question, in his opinion, would not be worth more than $250 an acre. Another witness is shown to be asking $250 a lot, or on the basis of six lots to the acre, at the rate of $1,500 an acre, for land adjoining that of defendant, and to have actually sold six lots ■ at that price. Another, in 1909, offered a five-acre tract for $500, and found no purchaser, and the tract was afterwards sold for $1,200; the witness attributing the increase in value to the expected building of the railroad. And still another witness is cited to the effect that he bought 36 acres- near defendant’s property, in January, 1912, at $300 an acre; that he would not have bought it but for the contemplated building of the road; and that he is now selling it at the rate of $100 per lot (or, say, $600 an acre).
“This difference, however,” says the court, referring to the difference in the testimony of the witnesses, “results, as we are constrained to believe, from the fact that the defendant’s witnesses estimated the land as of the time of the trial, which was 14 days after the petition was filed, while those of the plaintiff paid but little attention to the then value, * * * but fixed the value as of some indefinite and more or less distant time in the past, before the traction line was thought of or proposed. Indeed, it appears that plaintiff’s witnesses and its counsel were of the opinion that the defendant was not entitled to any value which had been added to his land by the contemplated improve-
*903 ment from the time it was first projected until the^time of the trial, a period of several years,
“The jury awarded $150, as the value of the land (actually taken), and, as we gather from the record, decided that the increase in the value of defendant’s remaining land, brought about by the construction of the traction line, was equal to the damages which he will suffer, and gave nothing on that score. * * * ”
The court reproduces the charge given by the trial judge to the jury, as follows:
“The criterion of value,” said the trial judge, “to be placed on property to be expropriated by a railroad company, is the market value of the property at the date of the institution of the expropriation suit, but the jury should deduct therefrom the increased value of the property brought about by the building of the contemplated railroad through the land of the defendant, although that benefit be general to the whole public, and that, if the damages which may accrue to his other land, not actually taken, is not as great as the general benefit to his other land, the jury would be justified in letting the benefits accruing by the building of the road offset any damages that might be done to other portions of his land. * * *
“We think,” says the Court of Appeals, “the charge was erroneous. Article 2632 of the Civil Code, after prescribing the method of procedure in expropriation matters, provides that the jury shall determine, after hearing the parties and their evidence, ‘what is the value of the land described in the petition with its improvements, and what damages, if any, the owner would sustain in addition to the loss of the land by its expropriation.’ And then follows this article:
“ ‘Art. 2633. In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or %vorh.’
“It will be seen, therefore, that the charge of the court instructed the jury to do just what the Code says they should not do; that is, that they should not deduct anything on account of the benefit derived from the contemplated improvement. The error into which the counsel for the company and the court have fallen arises, we think, from misconception of the phrase, in the article of the Code just quoted, ‘the true value which the land possessed before the contemplated improvement was proposed,’ and in giving it the interpretation which it would have if the phrase read, ‘the true value which the land possessed before the improvement was contemplated.’ But the Code says, on the contrary, ‘before the contemplated improvement was proposed.’ As we understand, the rule is this: The jury must assess the land at the market value which it possessed prior to the time when the improvement was proposed by the filing of the petition for expropriation. Any interpretation of article 2633 which would require or authorize the assessment of the value of the property possessed before the improvement was contemplated would, necessarily, require the jury to deduct the value which had accrued in the meantime, and that is just what the article, in the last clause, says shall not be done. * ♦ •
“If the framers of the Code had intended the meaning which counsel for the railroad would impute to the article, they would have said that the property should be assessed at the value it possessed before the improvement was contemplated, and stopped right there. Moreover, such a construction would be in the very teeth of the Constitution” — referring to article 167, and quoting it.
The court then makes an excerpt from the opinion of this court in the case of Railway Co. v. Cotton Oil Co., 118 La. 290, 42 South. 940 (to which we will advert hereafter), and proceeds:
“We understand the last part of the paragraph (referring to the paragraph excerpted from the opinion of this court) to mean that any value resulting, in the future, because of the building of the road, must be excluded from the computation; and this is a wise rule, because any such value is so uncertain as to amount to mere speculation, or prophecy, and, besides, any such value would cease to be of interest to the then owner of the land, because it would belong to the expropriating company. ‘But, more than this, such a construction as is contended for by plaintiff’s counsel would provide a method for ascertaining the value which would be entirely impracticable; and the best illustration of this is the case in hand.’
“The plan to organize a great factory subdivision of the city of Shreveport was begun as far back as 1910, and perhaps before then, and a number of the ablest and most resourceful capitalists and business men of the state undertook to develop it. A tract of land of nearly 1,000 acres was purchased, and, at the time this suit was filed, a number of factories were in operation, and it is a matter of public knowledge that a large and prosperous village had grown up around there. It is also a matter of public knowledge that the city of Shreveport and the surrounding country have enjoyed a remarkable era of prosperity, due to the development and extension of the oil and gas fields, as well as the enterprise of the citizens. These conditions have resulted in a steady increase in the value of lands, both in the city and near it. Each year has left them more valuable than the preceding year. Now, the construction of the traction line may be said to be the culmination of the original plan which the founders of the Cedar Grove factory site had in *905 mind, and it doubtless contributed, along with other causes, to tbe increase in the value_ of land lying between Oedar Grove and the city. But what point of time, in tbe gradual development of these conditions, is to be taken to represent the period, mentioned in the Code as the time ‘before tbe contemplated improvement was proposed’? And what proportion of the increase in the value of this property is due to the construction of this line? The law has, as we think, wisely provided a definite time and a safe and sane rule by which those questions can be answered, and has eliminated all necessity for guesswork on tbe part of tbe courts and juries in this matter, by declaring that the owner of the land shall be paid its value at tbe time the company proposes to expropriate it, and that no deduction shall be made on account of any increase in value because of tbe benefit derived, up to that time, from the contemplated improvement.
“Again, the rule contended for by counsel for tbe traction company is essentially unjust. What right has the state to force the defendant to sell his land to the railroad at tbe rate, say, of $300 an acre, when Ms neighbors, who are benefited just as much by the road as be is, are selling land, adjoining his and worth no more, at perhaps two or three times that much?
“The instructions given the jury, with reference to the question of damages, to tbe effect that such damages could be offset by the benefits derived from the construction of the road, were, we think, just as erroneous as the other part of the charge.”
The opinion here contains an excerpt from the opinion of this court in the case of Manning v. City of Shreveport, 119 La. 1044, 44 South. 882, 13 L. R. A. (N. S.) 452, to which we shall hereafter refer.
«* * * regret,” continues the Court of Appeals, “that we cannot dispose of tbe case finally, but, owing to what we must hold was erroneous instruction to tbe jury, by tbe district judge, the testimony of plaintiff’s witnesses is such as to throw but little light upon the present value of the land, or its value at the time when the suit to expropriate it was filed, or upon the amount of damages, if any, which the defendant will suffer. * * * ”
And the judgment appealed from was set aside and the case remanded.
Opinion.
[1] The Constitution of the state declares that:
“Art. 167. Private property shall not be taken nor damaged for public purposes without just and adequate compensation being first paid.”
And the Civil Code declares that:
“Art. 2362. * * * A jury (of freeholders) shall * * * determine, * * * what is tbe value of the land described in the petition with its improvements, and what damages, if any, the owner would sustain in addition to the loss of the land by its expropriation.
“Art. 2633. In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.”
Thus, the fundamental law positively prohibits the taking or damaging of private property, for public purposes, “without just and adequate compensation being first paid.”
And we shall refer to that prohibition hereafter.
Article 2632 of the Civil Code declares that the value of the land, and the additional damage, if any, that the owner “would sustain” by the expropriation, are to be determined by a jury of freeholders. Article 2633 purports to establish the basis upon which the jury is to make its assessment, and consists of a single sentence, of two clauses; the second clause serving merely to express in words a condition implied in the first. Considering the two clauses together, and construing the entire sentence with article 167 of the Constitution, we take the meaning to be that the owner is to 'be paid the true value of his land, as of the moment that it is legally demanded for a proposed public improvement, without including in such value the increment which may have resulted from the fact that the improvement has been proposed, and, on the other hand, without deducting therefrom the increment which may have resulted from the fact that the improvement has been in contemplation, or from any other cause, save that the improvement has been proposed.
[2] The reason for the distinction which the law thus draws between the increment *907 in the valué of property resulting from an improvement which is merely in contemplation and that resulting in a case where such improvement has actually been proposed (or actually constructed) would seem to be that the public at large, or particular individuals, may hold an enterprise, which, within the meaning of the law, is regarded as a public improvement, in contemplation for generations, only, in the end, to abandon the idea, whilst the property to be affected by it is, in the meanwhile, on the. market, and is bought and sold at prices which vary as the prospect that the improvement will be made, or will be abandoned, becomes, in the opinions of the buyers and sellers, imminent or remote. In other words, the possibility or probability, that some improvement affecting particular property will, or will not, be made, and, if made, when, and with what effect, are commonplace factors, which, with others, determine, from time to time, the market value of such property. When, however, the period of uncertainty — of mere hope, speculation, anticipation, or contemplation — is past, and the time arrives when the property is demanded for the purposes of an improvement actually proposed, the state, having the right to take it, upon first making just and adequate compensation, should not be required to pay, in addition to its true value, a further amount, merely because of the purpose for which it is to be used, inasmuch as that purpose is to promote the welfare of the entire community. The Constitution, however, prescribes no rule by which to determine the justness and adequacy of the compensation which is to be paid to the owner in such cases, but has left that duty to the lawmakers; and the lawmakers have declared that the basis of assessment shall be the true value which the property possessed when the contemplated improvement was proposed, without deducting any amount for the benefit derived from such contemplated improvement; thus leaving it to the courts to determine when a contemplated improvement is to be considered a “proposed” improvement. The instruction given by the trial judge that the jury should deduct from the market value of the property, at the date of the institution of the suit, “the increased value brought about by the building of the contemplated railroad,” was somewhat involved and confusing, sinpe, the railroad being, at that time, only a contemplated or proposed road, there could have been no increased value then brought about by its building. If the learned judge had said “the increased value brought about by the proposed building of the contemplated road,” the defendant would have had no reason to complain. But, as we gather from the statement of the Court of Appeals, concerning the testimony, and from the brief which has beén filed by the counsel for the railroad company, the idea that the judge intended to convey, and did convey, to the jury, was that they were to deduct from the then market value of the property the increased value brought about, not by the “building of the contemplated railroad,” but by the contemplated building of the railroad, which, as the Court of Appeals finds, “is just what the article (C. C. 2633) in the last clause says shall not be done.”
It is true that, in the case of Louisiana R. & N. Co. v. Xavier Realty Co., 115 La. 342, 39 South. 1, this court used language somewhat similar to that which is the subject of the present criticism; but the whole of the language there used should be taken together, and, so taken, has been construed by this court, in the later case of Opelousas G. & N. R. Co. v. St. Landry Cotton Oil Co., 118 La. 291, 42 South. 940, where, after quoting C. C. 2633, the court said;
“In accordance with the letter of this article, the judge a quo ruled that, in estimating the value of the property, its value was to be determined, not as of the day of the taking, but as *909 of the time the construction of the plaintiff’s railroad was proposed; and, accordingly, he restricted the evidence to the value at that time, and instructed the jury to base their estimate on that value. This was'error. The value has to be computed as of the day when, the line of the' railroad having been definitely located and the need for the land having actually arisen, the expropriating company demands to have it and offers to make payment, leaving out of the computation, however, any increase in value resulting from the proposed improvement. The question was considered by the court in the case of Louisiana R. & Nav. Co. v. Xavier Realty Co., 115 La. 338, 39 South. 1, and decided in that sense. The other interpretation would make Civil Code, art. 2633, unconstitutional; for, until the offer is made to pay for the land, it continues to be held In perfect ownership by the owner, and any increment in its value, resulting from any other cause than from the improvement proposed by the expropriating company, must, necessarily, inure to his benefit. Otherwise such increment would be taken from him without compensation.”
In the case of Railroad Co. v. Bradford, 118 La. 510, 43 South. 80, it was said:
“The criterion of value is the market value of the property at the date of the institution of the expropriation suit, in view of any use to which it may be applied and of all the uses to which it is adapted, exclusive of any increase in value given by the construction of plaintiff’s railway thereon.”
Elsewhere in the opinion it was said:
“The plaintiff company had purchased the right of way through an adjoining tract at the rate of $200 per acre. Defendant’s tract, being nearer the business portion of the town, was worth more. Prior to the advent of the railroad the defendant had taken no steps to subdivide the property,” etc.
It would, no doubt, have been in more exact conformity to the statute if the opinion had read, “exclusive of any increase in value given by the proposed construction of plaintiff’s railway thereon.” But the case was one, apparently, in which it was shown that the expropriating company had not only proposed the construction of its road, but had actually constructed it, if not on, at least, in such relation to, the property of the defendant, that the difference between the proposed and actual construction on his property was regarded as inappreciable. The opinion is, however, very far from authorizing the inference that the court intended to convey the idea that any increase of value resulting from the fact that the road was in contemplation, at some period pri- or to its proposed or actual construction, should be deducted from the value of the land, as of the date of the institution of the suit for its expropriation.
The answer to the question, at what time, within the meaning of the statute, can it be said that the contemplated improvement has been proposed, may, we think, vary somewhat with the circumstances of the cases in which the question arises. But a public improvement in the form of a railroad, most assuredly, cannot be said to be proposed, in the sense mentioned, in a ease where, for instance, a number of capitalists, having purchased a tract of land for the development of industrial enterprises, and having divided it into lots, hold out merely the hope, or prospect (in offering the lots for sale), that a railroad will be built to connect them with the business centers of the country. There should, in such case, we think, be a definite offer, imposing an obligation to build the road within a definite period; or definite stops importing a present and “bona fide purpose to do the work, such as the location of the line of the road, followed by purchases or expropriations of the right of way, should be taken, since the law with which we are dealing does not mean that a public improvement is “proposed,” either by being merely held in contemplation, or by an indefinite, though iridescent, proposition to the circumambient air, which may be relegated to the distant future for its execution.
The rule, in a case such as this, for the assessment of the damages which the owner would sustain, in addition to the loss of part of his land, by the expropriation of another part, is necessarily the same as that by which the value of the land is determined; • that is *911 to say, the value of the property which is to sustain the damage, ascertained in the manner and upon the basis herein before indicated, must be taken as the basis upon which the prospective damages are to be assessed; for it can make no difference, so far as the consequence to the owner is concerned, whether his property is taken from him, or it, or its value, is destroyed.
[3] Counsel for defendant say in their brief:
“So, in determining what were the damages of the defendant, it cannot be said that he was damaged, if, at the same time, he was benefited to an equal amount. To so assert would be going in the face of reason and common sense.”
And they reach the conclusion that the only way to arrive at the damages is to take the difference between the market value of the property before and after the construction of the railroad.
The Constitution, however, prohibits either the taking or the damaging of private property for a public purpose “without just and adequate compensation being first paid”; and the statute declares that the jury shall determine “what damage, if any, the owner would sustain, in addition to the loss of the land, by its expropriation.” To say, therefore, that the damage which the owner would sustain must be ascertained by talcing the difference in the value of the land before and after it has been damaged, is to bring one’s self in conflict, at once, with the prohibition of the Constitution and the mandate of the statute.
As we have already found, land, to be expropriated or damaged, is to be valued, for the purpose of determining the amount of compensation which the owner is to be paid, as of the time at which the demand for the expropriation is made, deducting from that valuation the increase which has resulted from the improvement, as actually “proposed,” but making no deduction for benefit derived from the improvement as merely contemplated. In the instant case, the defendant owns a five-acre lot, of which plaintiff proposes to take a half acre and to segregate another half acre, besides, as we assume, inflicting damages on the land not actually taken, by its embankment. Let us then further assume that the railroad has been in contemplation, possibly, for several years, but with no definite proposal or movement importing present execution, to build it; that, such being the situation, the market value of the five acres was $100, or $20, an acre; and that, the proposal or movement to build being then made, the immediate consequence was that the market value became $200, or $40 an acre; so that, if defendant had given up the two half acres entirely, he would have had left four acres, worth $160, or $60 more than the five acres were worth before the “contemplated improvement was proposed.” In such case, the argument that we are considering would lead to the conclusion that the expropriating company might take the two half acres and pay the defendant nothing. But that argument ignores the fact, to which we have already called attention, that it makes no difference, so far as the consequence to the owner is concerned, whether he is deprived of his property by having it taken from him, or by having it, or its value, destroyed. It also ignores the fact that the increment in the value of the land, resulting from the fact that the contemplated improvement has been proposed, is no more to be taken into account (save, perhaps, where the owner derives a special benefit, not enjoyed by other members of the community) for the benefit of the one party to the expropriation, or damage, than of the other. Defendant is not to enjoy it, because it was not part of the true value of the land at the time plaintiff decided to exercise its legal right to expropriate or damage the land, but was added solely by reason of the exercise, or proposed exercise, of that right. And plaintiff is not to enjoy it, *913 at the expense of defendant (save to the extent that it is not to be added to the value which the property otherwise possessed), because, in proposing to build its railroad, it acted in its own interest and has no more right to tax defendant for any incidental advantage that he may derive therefrom than it has to tax any other citizen whose property is similarly affected, but is neither taken nor damaged; or than the state, itself, would have to lay a special tax upon property in the vicinity of a proposed state capitol, or any other public work, intended for the use and enjoyment of all the people of the state, and because the law declares that the owner shall be paid the value which his land possessed before the road was proposed. In the case of Manning v. City of Shreveport, to which the Court of Appeals has referred, the plaintiff sued for damages to his property resulting from the changing of the grades of the two streets, upon the corner of which the property was situated. The suit having been brought after the damage had been inflicted, the court held that such damage was represented by the amount that it would cost to put the property in such condition as that it would be as desirable and valuable as before the infliction, but failed to find that the grading had enhanced the value, and took, as the basis of its award, the value prior to the execution of the work, 'it was said, in the course of the opinion:
“The city has done a great work, but it has no right to call upon the plaintiff to pay more than his share.”
And, in another place, referring to C. C. 2633, it was said, in effect, that the idea there expressed was that, in all benefits that inure to the community—
“each member is entitled to share upon the same terms as the others, and hence, where the property of one is taken, in order that such benefits may result, the owner is entitled to be compensated for the loss which he, alone, sustains, undiminished by any deduction on account of the benefit which he shares, of right, as a member of the community and in common with the other members.”
The language thus quoted, if applicable to such increment in the value of Manning’s property as was said to have accrued as the result of the grading, which had been done before the suit was filed, can only be applied in so far as it was proposed to deduct that increment from “the true value which the property possessed before the improvement was proposed,” because, as we have seen, the owner is entitled to be paid that value, and the deduction of the increment resulting from the fact that the improvement has been proposed can only be made from the aggregate of the true value and the increment. In other words, the increment in question, which had been added to the true value, was to be withdrawn from the sum of the two, in order to ascertain the true value, which was the amount to be paid. But, in point of fact, the court had already found that there- was no such increment in the case, and was called on to deal only with some ifacrement, which it was said had accrued, or.might accrue, by reason of the possibility that the newly graded streets would attract new lines, of street cars, and, referring to that outlook, it was said:
“If it be such (a prospective benefit), it is common to the community and is not to be taken into account in the ascertainment of the damage for which’plaintiff claims compensation.”
As will be seen, from the foregoing, we concur with our brethren of the Court of Appeals as to the main propositions involved in the case; the only difference between us being that we do not think that, under the law, the moment when a “contemplated improvement is proposed” can be fixed, in all eases, as that at which the expropriation suit is instituted. We conclude that the case was properly remanded, but hold that,, as to the matter last *915 mentioned, the district court should be guided by the views expressed in this opinion.
For the reasons assigned, this application be now dismissed.