415 So.2d 196 (1982)
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS
v.
Gordon BITTERWOLF.
No. 81-C-1646.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied July 2, 1982.
*197 Bryan Miller, Johnnie E. Branch, Jr., William W. Irwin, Jr., Bernard L. Malone, Jr., Richard N. Burtt, Harvey Lee Hall, Baton Rouge, for plaintiff-applicant.
Clint L. Pierson, Jr., of Pierson & Buras, Covington, for defendant-respondent.
DENNIS, Justice.
We granted writs in this "quick taking" expropriation suit to determine whether the rule, that compensation for property taken is to be measured without considering any change in value caused by the proposed improvement for which the property is taken, is applicable if the expropriatee purchased the property, in an arms-length transaction, after the value of the property had already been reduced by the prospect of the expropriation action.
The fact that a public improvement has been proposed may cause a change in property values in the neighborhood through which it will pass. Land values may rise or fall before any property is taken if the projected public work is perceived as beneficial or injurious to its surroundings. See, 4 Nichols on Eminent Domain, § 12.3151 (3rd ed. 1981). This court has long held, in accord with civil code precepts designed to prevent overestimation of an owner's true loss, that the valuation of property expropriated must be reduced by any increase caused by the fact that the improvement was proposed. The "quick taking" statute was amended effective January 1, 1975 to prevent underestimation, as well as overestimation, by providing that the measure of compensation for property expropriated for highway purposes shall be determined "without considering any change in value caused by the proposed improvement for *198 which the property is taken." La.R.S. 48:453(A) (Supp.1975) [emphasis added]
The question presented by this case is whether the quick taking statute affords a property owner a right to recover, in addition to the value of his property taken, compensation for the depreciation in its value caused by the proposed project before he acquired the property. The trial court and court of appeal, applying La.R.S. 48:453(A) in isolation from constitutional and other statutory precepts, approved the award of such compensation. We reverse. An owner cannot recover more than compensation to the full extent of his loss for property taken or damaged by the state. Although the constitutional right to property does not prohibit the state from compensating an owner for more than the full extent of his loss, it has never been the aim of our implemental legislative and jurisprudential precepts to require anything more than just compensation for the owner's loss. La.R.S. 48:453, which was amended to incorporate these precepts and the constitutional principle of just compensation, is designed to compensate an owner only to the full extent of his loss.

Statement of Facts
The State of Louisiana, through the Department of Highways instituted this suit to expropriate a tract of land in St. Tammany Parish fronting on U. S. Highway 190 from the defendant, Gordon J. Bitterwolf. The land was needed as part of a State and Federal project to widen, improve and surface State Route La-U.S. 190 as a controlled access highway.
The record reveals that in 1968 the state of Louisiana made an announcement that La-U.S. 190 and the North Causeway approach from I-12 to Lake Pontchartrain Causeway would be a controlled access highway. Service roads would be erected on the property fronting U.S. 190 and only two interchanges were contemplated in the immediate area. The effect of this announcement resulted in depressing property values south of the interstate.[1]
Mr. Gordon Bitterwolf bought a 1.34 acre tract of land (consisting of 57,717 square feet) located within the area of depressed property values, on March 10, 1973, from Edward A. Elfer for $48,000. The purchase was some four and one-half years after the state's announcement and less than two years before the expropriation in this case by the state.
An order of expropriation was signed by the Court on February 3, 1975. On the same day the State deposited into the registry of the court the sum of $21,395.00 which represented the state's estimated value of the land expropriated. The state took 22,520 square feet of the undeveloped land with 75 feet being front footage. After withdrawing the funds deposited, Bitterwolf answered the petition of the State alleging that the just compensation for the property taken and severance damages to the remainder was in the amount of $75,000.00.
At trial both the state and the property owner introduced the testimony of appraisers on the issues of compensation for the property taken or damaged. The state's appraisers relied on comparable sales of property within the neighborhood of the taking which had been depressed in value by the proposal of the project. The property owner's appraisers used comparable sales from an area outside the immediate vicinity of the subject property, in which property values had not been adversely affected by the announcement of the project.

Trial and Appellate Court Decisions
The trial court awarded Mr. Bitterwolf $41,662.96 for the property taken and $29,917.01 for severance damages to his remainder. The court of appeal affirmed these *199 awards,[2] holding that Mr. Bitterwolf was entitled to be compensated for the depreciation in property value caused by the project's announcement, by virtue of La. R.S. 48:453(A)'s ban against "considering any change in value caused by the proposed improvement for which the property is taken," despite the fact that he acquired the entire property four years after the state's announcement.

Issue Presented
We granted writs to consider whether La.R.S. 48:453 requires the courts to disregard depreciation of property values caused by the proposal of a project even when the defendant property owner purchased at the depressed value and therefore sustained no loss caused by the fact that the project was proposed.

Just Compensation to the Full Extent of An Owner's Loss
Property cannot be "taken or damaged" by the state or its political subdivisions except for public purposes and with "just compensation" paid to the owner or into court for his benefit. La.Const.1974, Art. 1, § 4. In every expropriation, the owner must be compensated to the "full extent of his loss." Id. Thus, our constitution does not simply require that the owner of condemned property be compensated with the market value of the property taken and severance damages to his remainder, but that he be "placed in as good a position pecuniarily as [he] enjoyed prior to the taking." State v. Constant, 369 So.2d 699, 702 (La.1979). See Note, Expropriation: Compensating the Landowner to the Full Extent of His Loss, 40 La.L.Rev. 817 (1980).

Compensation for Property Taken
Under previous Louisiana constitutions, the legislature and the courts have developed rules which accepted market value as a relevant consideration in determining just compensation, but which also required adjustments of market value to prevent effects of a project's proposal itself from distorting a calculation of the owner's true loss. Civil Code article 2633 provides that "the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work." Construing the code article with the constitutional requirement of just compensation, this court held that the owner is to be paid the true value of his land, as of the moment that it is legally demanded for a proposed public improvement, without including in such value the increment which may have resulted from the fact that the improvement has been proposed, and, on the other hand, without deducting therefrom the increment which may have resulted from the fact that the improvement has been in contemplation, or from any other cause, save that the improvement has been proposed.[3]Shreveport Traction Co. v. Svara, 133 La. 900, 63 So. 396 (1913).
As this court explained in the Shreveport Traction Co. case, the reason for the distinction which the law draws between the increment in the value of property resulting from an improvement which is merely in contemplation and that resulting in a case where such has actually been proposed (or actually constructed) is that:
"[T]he public at large, or particular individuals, may hold an enterprise, which, within the meaning of the law, is regarded as public improvement in contemplation for generations, only, in the end, to abandon the idea, whilst the property *200 to be affected by it is, in the meanwhile, on the market, and is bought and sold at prices which vary as the prospect that the improvement will be made, or will be abandoned, becomes, in the opinions of the buyers and sellers, imminent or remote. In other words, the possibility or probability, that some improvement affecting particular property will, or will not, be made, and, if made, when, and with what effect, are commonplace factors, which, with others, determine, from time to time, the market value of such property. When, however, the period of uncertaintyof mere hope, speculation, anticipation, or contemplationis past, and the time arrives when the property is demanded for the purposes of an improvement actually proposed, the state, having the right to take it, upon first making just and adequate compensation, should not be required to pay, in addition to its true value, a further amount, merely because of the purpose for which it is to be used, inasmuch as that purpose is to promote the welfare of the entire community." Id. 63 So. at 398-99.

Severance Damages
The Louisiana courts since 1889 have compensated for severance damages according to a "before and after" test under which the measure is the diminution in the value of the remaining property caused by the taking. McMahon v. St. Louis A & T. R. R., 41 La.Ann. 827, 829-30, 6 So. 640, 641 (1889); M. Dakin & M. Klein, Eminent Domain in Louisiana pp. 70-73 (1970, Supp. 1978); Tate, Legal Criteria of Damages and BenefitsThe Measurement of Taking-Caused Damages to Untaken Property, 31 La.L.Rev. 431, 433 (1971). Our jurisprudence also established the auxiliary precepts that, while general benefits received by all property in the neighborhood may not be used to reduce severance damages, recovery for severance damages may be set off by any special benefits the remainder receives as a consequence of the new improvements for which the property is taken. State v. Central Realty Inv. Co., 238 La. 965, 117 So.2d 261 (1960); Thomas & Warner v. City of New Orleans, 230 La. 1024, 89 So.2d 885 (1956); State v. Cooper, 213 La. 1016, 36 So.2d 22 (1948); Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941); M. Dakin & M. Klein, supra, at 86-88; Tate, supra, at 436-37. The underlying reasons for the setoff rules as stated by this Court in Louisiana Highway Comm. v. Grey, 197 La. 942, 2 So.2d 654 (1941) are as follows:
"The benefits or advantages, if any, which may result from the construction of the work are either general or special. General benefits are those which are shared alike by all property owners in the neighborhood or community. Such damage as a property owner may sustain as a result of the construction and use of a public work cannot be offset by these general benefits. The reason is that the citizen whose property is taken cannot be compelled to bear more of the cost of the public improvement and general benefits resulting therefrom than is borne by other property owners whose property is neither taken nor damaged for the public purpose.
"* * *
"The rule is different as to peculiar or special benefits, or those affecting a particular estate by reason of its direct relationship to the improvement. If, as a result of constructing a new work, the remaining land or part of it is left fronting on a road or street, and the land fronting the road or street is more desirable and more valuable because of the frontage, the advantage thus gained is a special or peculiar benefit, and damages to the remaining property may be offset by such benefits. * * *" 2 So.2d at 660-61.
Louisiana Civil Code article 2633 has, since 1870, prohibited the deduction from any award for the property actually taken of "any amount for the benefit derived by the owner from the contemplated improvement or work." See also, La.R.S. 19:9 (1950). The statutory prohibition, of course, applies only to deducting benefits from the award for the taking itself; the *201 deduction of special benefits from severance damages otherwise allowable is sanctioned by our jurisprudence, even though such benefits cannot set off the award for the taking itself. See, M. Dakin & M. Klein, supra, at 88-89; Tate, supra, at 436.

The Quick Taking Statute
Upon adoption of Article 1, § 4 of the 1974 Louisiana Constitution, which broadened the concept of just compensation to cover the full extent of the owner's loss, the legislature amended and reenacted the statutory rules governing "quick takings" for highway purposes, La.R.S. 48:441-460, to harmonize them with the new due process guarantee and the established statutory and jurisprudential precepts. As part of this legislation, La.R.S. 48:453 became effective January 1, 1975, and at the time of the taking in this case provided:
A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.
B. The measure of damages, if any, to the defendant's remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
C. The owner shall be compensated to the full extent of his loss.
D. The department shall present its evidence of value first. [amended by Act 391 of 1976 to provide that: "The defendant shall present his evidence of value first."]
E. Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court.
By the amendment and reenactment of La.R.S. 48:453, the legislature (1) recognized the new express constitutional requirement that the owner shall be compensated to the full extent of his loss; (2) incorporated the established rule that compensation for takings shall not include any increment in market value resulting from the fact that the improvement has been proposed; (3) expanded this rule to provide that any change in market value caused by the proposed improvement, whether an increase or a decrease, shall be disregarded; (4) incorporated the severance damage "before and after" test and "special benefits" rule;[4] and (5) added rules governing attorneys fees and the order of trial.
The clear legislative aim of La.R.S. 48:453 pervades each of its parts. Its object is to implement the constitution by assuring that each owner is justly compensated to the full extent of his loss for property taken or damaged by the state, i.e., to see to it that he is placed in as good a position pecuniarily as he enjoyed prior to the taking. This purpose is expressly stated by the statute and each section of the legislation must be construed to further its central goal.
Interpreting the statute in this way, we conclude that it is designed to compensate each person only for the amount of his own loss due to a taking or damage of his property by the state. The legislative and jurisprudential history of the rules incorporated *202 by La.R.S. 48:453 indicates clearly that they by no means express the ultimate ends of eminent domain law. Rather, they merely require adjustments when the actual market value at the time of taking does not reflect an owner's actual loss or gain due to the effects of the proposed improvement. Under La.R.S. 48:453(A), expropriation-induced changes in value, whether upwards or downwards, are excluded from consideration so that neither party will be adversely affected by market abnormalities caused by the prospect of the expropriation.[5] The rules of adjustment were never intended to permit any owner or class of owners to receive compensation, for land taken or damaged, which amounts to more or less than an individual owner's actual loss.
In La.R.S. 48:453(A), the legislature provided that compensation for property taken shall be measured "without considering any change in value caused by the proposed improvement for which the property is taken." Although the statute does not explicitly so state, we think it was intended that the courts should disregard only changes in value caused by the proposed improvement which occurred subsequent to the expropriatee's purchase of the property. In the vast majority of cases in which market value at taking is affected by the proposed improvement, the expropriatee is the owner of the property at the time of its change in value. In measuring compensation in such a case, an adjustment to market value is appropriate under our long standing policy that the state should pay an owner the true value of his property taken without respect to any increment in value (or devaluation) caused by the purpose for which it is taken. See, Shreveport Traction Co., supra.[6] In the unusual case in which an expropriatee purchases the property following such a change in value, however, this type of adjustment is not called for because the expropriatee has not been adversely affected by the previous change in value. In reality, his property interests did not undergo any expropriation-induced change in value. To apply the adjustment in such an unusual case would cause the expropriatee to be compensated for more or less than his actual loss. If, for instance, an expropriatee purchases property, already depressed in value by the proposed project, and his compensation for the taking is adjusted upwards pursuant to La.R.S. 48:453(A) to offset expropriation-induced depreciation, he would reap a windfall. An expropriatee in such a case has not been adversely affected by the expropriation-induced depreciation of the property; he benefitted from its effects which were reflected in the reduced purchase price he paid. On the other hand, if an expropriatee purchases property subsequent to the time that a project is proposed, and the value of the property already has been enhanced by the proposed project, a mechanistic application of La.R.S. 48:453(A) would require an adjustment downwards of the market value of the property despite the fact that the expropriatee may have purchased the land in good faith at its enhanced value. In view of the legislative aim to compensate each owner to the full extent of his loss, the statute implicitly applies only to changes in value which occur during an expropriatee's ownership of the property, or else the lawmakers did not advert to the unusual situation presented by this case and thus failed to provide for it in La.R.S. 48:453(A). We reject as unlikely and incongruous with the statute's purpose, history and constitutional underpinnings, the notion that La.R.S. 48:453(A) is designed to permit a small class *203 of expropriatees to be compensated for more or less than the full extent of their losses.
We have found no Louisiana case in which an expropriatee acquired the property taken after a change in value caused by the proposed improvement for which it was taken. We found no case in any jurisdiction in which an owner was permitted to recover for condemnation-induced depreciation of market value which occurred before he acquired the property. In a Superior Court of New Jersey case, State v. S. Nablone Trucking Co., Inc., 128 N.J.Super. 370, 320 A.2d 186 (1974), cert. denied, 65 N.J. 575, 325 A.2d 708 (1974), a situation similar to Mr. Bitterwolf's was presented. The reasoning of the court, although not based on statutory law, is persuasive and similar to our view:
"Whatever may have been the depreciating effect (if any) upon the market value of the condemned premises resulting from the prior announcement of the proposed taking, defendant-owners benefitted from it to the same or greater extent at the time they purchased the premises in 1970. And, just as an owner is not entitled to benefit from an enhancement in value as a result of a previous announcement of a proposed taking, 4 Nichols, supra, § 12.3151[1]; Annotation, `CondemnationDamagesEnhanced Value,' 147 A.L.R. 66 (1943); Jersey City Redevelopment Agency v. Kugler, supra, 58 N.J. [374] at 379, 277 A.2d 873, so a landowner who has not been damaged by the depreciating effect of such prior announcement is not entitled to reap a windfall. If there were any doubt that defendant-owners were not damaged as a result of any such depreciating effect, it is at once dispelled when it is observed that the amount awarded the owners by the jury ($508,500) exceeded the price paid by them for the premises just 16 months earlier ($325,000) by the sum of $183,500more than 56% over and above the 1970 purchase price."
In the present case, if there can be any doubt that Mr. Bitterwolf should not recover for the depreciation of property value which was caused by the state's announcement of the project and which occurred prior to his purchase of the property, it is dispelled by the observation that the amount awarded him for the part taken plus severance damages to the remainder ($71,579.97)[7] exceeded the price he paid for the entire premises just 23 months earlier ($48,000) by the sum of $23,579.97more than 49% over the 1973 purchase price. Furthermore, defendant's own appraisers, Mr. Stevenson and Mr. Boetner, placed an after-taking value of $35,196 and $46,936 respectively on the defendant's remainder.
We conclude for the foregoing reasons, that the previous courts fell into an error of law by assuming that La.R.S. 48:453(A) required the trier of fact to disregard any change in value to the property caused by the proposed improvement which occurred before Mr. Bitterwolf's ownership. The adjustment to market value required by this statute applies only to changes in value which occur subsequent to the expropriatee's purchase of the property. The evidence in this case makes it clear that most, if not all, of the change in value induced by the project's announcement occurred before Mr. Bitterwolf acquired the property. Accordingly, all of the change in value which occurred before Mr. Bitterwolf became the owner of the property should have been considered in measuring the compensation for the property taken and the damage to the remainder. Since Mr. Bitterwolf was not adversely affected by expropriation-induced depreciation of the property's value, he is not entitled to an adjustment which is designed solely to protect parties against such losses. The award for the property taken and the severance *204 damages should have been based on actual market values.[8]
The issue presented in this case was res nova prior to this decision. The previous courts' erroneous construction of La.R.S. 48:453 skewed the awards for the property taken and the severance damages. The landowner's appraisers based their selection of comparables on the same incorrect theory. Although this court is not disposed to remand a case for retrial simply because a litigant has pitched his case on the wrong theory, we think there is countervailing extenuation in this case. The statute with which the parties and the courts had to contend below is not a model of clarity. Only after laborious examination and exegisis of jurisprudence covering many areas of expropriation law were we able to interpret the statute with confidence. Although it is clear that Mr. Bitterwolf is not entitled to compensation for expropriation-induced depreciation in value which occurred prior to his purchase of the property, there is a possibility that some of the downward change occurred during his ownership. The testimony of expert witnesses and the findings of the trial judge are ambiguous on whether the depressive effect on market value attributable to the project's announcement had fully run its course before Mr. Bitterwolf acquired the property. Because of these difficulties the record compiled in the trial court is less than adequate for the determination of just compensation for the taking and severance damages. Accordingly, in the interest of justice and a proper and legal judgment, the judgments below will be reversed and the case will be remanded to the trial court for further proceedings consistent with the views herein expressed.
One further issue should be mentioned briefly. Mr. Bitterwolf's vendor by warranty deed assigned all of his rights as owner to the defendant when he purchased the property. Therefore, Mr. Bitterwolf argues, he is entitled to assert his vendor's claim against the state for the depreciating effects upon its value during the vendor's ownership caused by the proposal of the improvement. The short answer to this contention is that Mr. Bitterwolf's vendor had no cause of action or claim to assign. At the time of the sale there had been no taking of the property. An actual taking is required before damages are allowed except in instances in which a landowner suffers special damages not sustained by the public in general, rather than merely incidental damages. Reymond v. State, Dept. of Highways, 255 La. 425, 231 So.2d 375 (1970). See, M. Dakin & M. Klein, Eminent Domain in Louisiana pp. 63-4 (1970); Tate, supra, at 433; Dakin, Developments in the Law, 1979-1980: Expropriation, 41 La.L.Rev. 474 (1981) Comment, ExpropriationConsequential Damages Under the Constitution, 19 La.L.Rev. 491 (1959).
REVERSED AND REMANDED TO TRIAL COURT.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
La.R.S. 48:453(A) provides that the measure of compensation for property expropriated is determined as of the time of taking "without considering any change in value caused by the proposed improvement for which the property is taken." Clearly, compensation for takings should not include "any change" in market value caused by the proposed improvement, whether an increase or a decrease.
Under the above statute, compensation for property taken is to be made without *205 considering any change in value caused by the proposed improvement. Ownership of the property is determined as of the time of the taking. Prior ownership of the property is of no moment. Hence, it matters not whether the owner of the property sells, donates or otherwise disposes of his property between the announcement of the proposed improvement and the actual taking of the property. The only requirement of the statute is that the owner of the property, at the time of the taking, be compensated "without considering any change in value caused by the proposed improvement for which the property is taken."
Hence, in the instant case, Bitterwolf, as the owner of the property at the time of the taking, should be compensated without regard to the decrease in value of the property caused by the proposed improvement. The converse would likewise be true in the event that the property had increased in value, that is, compensation should be paid without regard to any increase caused by a change in value resulting from the proposed improvement.
I respectfully dissent.
NOTES
[1] This condition is variously referred to as "condemnation blight" or "planning blight." See, 7A Nichols, supra, at § 14.02(4); Sackman, Condemnation BlightA Problem in Compensability and Value, 1973 Institute on Planning, Zoning, and Eminent Domain 157 (1973); Kanner, Condemnation Blight: Just How Just Is Just Compensation? 48 Notre Dame Lawyer 765 (1973).
[2] State, Through Dept. of Highways v. Bitterwolf, 401 So.2d 380 (La.App. 1st Cir. 1981).
[3] The question of when a "contemplated" improvement becomes "proposed" is left to the courts and may vary with the circumstances of the case. Id. 63 So. p. 399. See, e.g., State through Dept. of Highways v. Trippeer Realty Corp., 276 So.2d 315 (La.1973); Louisiana Ry. & Nav. Co. v. Xavier Realty, 115 La. 328, 39 So. 1 (1905); State through Dept. of Highways v. Lirocchi, 329 So.2d 803 (La.App. 1st Cir. 1976); State through Dept. of Highways v. Port Properties, Inc., 316 So.2d 749 (La.App. 1st Cir. 1975); State through Dept. of Highways v. Johnson, 141 So.2d 54 (La.App. 2d Cir. 1962).
[4] The legislative intent to perpetuate the rule permitting severance damages to be set off by any special benefits the remainder receives as a consequence of the improvements for which the property is taken was made clearer by Act 391 of 1976. As amended by it, La.R.S. 48:456.1 provides:

The plaintiff shall not be required to amend its petition in order to obtain judgment in an amount less than that originally deposited into the registry of the court, but the plaintiff may not introduce evidence as to any special benefits unless specially pleaded. If severance damages are pleaded by the defendant, the plaintiff shall have the opportunity to plead special benefits twenty days prior to trial.
[5] Compare, Uniform Eminent Domain Code § 1005, Comment (1974).
[6] Even in the absence of La.R.S. 48:453(A), such an adjustment to the fair market value might be mandated by the United States Constitution. In United States v. Virginia Electric & Power Co., 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961), the Supreme Court stated the rule as follows:

"The court must exclude any depreciation in value caused by the prospective taking once the Government `was committed' to the project."
365 U.S. at 636, 81 S.Ct. at 792. See, Dunham, Griggs v. Allegheny County in Perspective: Thirty Years of Supreme Court Expropriation Law, 1962 Sup.Ct.Rev. 63, 95 (Kurland ed.)
[7] The trial court's lump sum award of $50,184.97 to defendant apparently represents payment for the part taken at $1.85 per square foot together with $29,917.01 in severance damages less the $21,395 already deposited in the registry of the court and withdrawn by the defendant.
[8] La.R.S. 48:453(B) does not specify whether any expropriation-induced changes in property value should be excluded from consideration when calculating the before-taking or after-taking values of the remainder. Cf., La.R.S. 48:453(A); Uniform Eminent Domain Code § 1005, Comment (1974). Even if La.R.S. 48:453(B) required the exclusion of changes in property value attributable to the state's announcement, such an adjustment in market value would be improper in the instant case for the same reasons we rejected the application of such an adjustment in determining the amount due defendant for the property taken under La.R.S. 48:453(A).